EDWIN T. PECK

*v.*

ELMIRA H. BLIGH et al.

37  317
170  546
72a 278

37  317
99a  4618

37  317
102a 2136
37  317
205  4 68

1. CONSIDERATION—*recoupment of damages.* An agent, for the purpose of procuring subscription to the stock of a railway company, upon taking from a subscriber a note for his stock secured by a mortgage, gave to him an instrument by which the company guaranteed him against loss upon his stock. The agent was authorized by the board of directors to execute such an instrument. After the stock became entirely worthless, the complainant filed a bill to foreclose the mortgage. The defendant filed an answer and a cross-bill, setting up these facts, and praying a cancellation of the notes and mortgage. *Held,* that the defence would have been good against the company, and the relief prayed by the cross-bill allowable, and that as the complainant claimed the note and mortgage under an instrument which did not operate to transfer the legal title to him as an assignee under the Statute, he occupied the same position as the company.

2. PROMISSORY NOTE—*assignment of.* A note for railway stock, payable to the president of the road individually, and not in his official capacity, can be assigned, so as to give the holder the rights of an assignee, only in his name. In no other way can the legal title pass.

3. SAME. In such ᴀ case, a bond executed by the company, under its corporate seal, and purporting to guarantee to the holder thereof the payment of

the note at a different time and place from those specified in the note itself, and also providing that the note shall be transferred only in connection with the bond, is not such a guaranty of the note as will pass the legal title, and cut off the equities of the maker. The bond is the principal instrument in the hands of the holder, and the note but the incident. The assignment is qualified, and should put purchasers on their guard.

SAME. The only assignment which will cut off the equities of the maker of the note is one made in conformity with the Statute, and passing the legal title.

APPEAL from the Circuit Court of Winnebago county; the Hon. B. R. SHELDON, Judge, presiding.

This was a bill in chancery to foreclose a mortgage, filed December 5, 1860. The facts fully appear in the opinion.

Mr. STEPHEN R. MOORE, for the appellant, submitted the following points and authorities :

This is a bill in chancery to foreclose a mortgage executed by Alpha Bligh and wife, to Henry S. Durand, upon lands in Winnebago county, dated May 12, 1855, to secure note of $3,000, payable in five years from February 10, 1855.

The defence insisted upon is, that Bligh received in payment for the note and mortgage, thirty shares of the Racine and Mississippi Railroad Stock, which has since become worthless, and which the heirs of Bligh now offer to surrender to plaintiff, in satisfaction of the note and mortgage.

It is settled beyond controversy that the Racine and Missippi Railroad Company have a right to receive notes and mortgages for cash installments of their stock; (nor has this been denied in this case,) and that the securities are valid and will be enforced against the maker. *Clark* v. *Farrington*, 11 Wis., 307; *Blunt* v. *Walker*, 11 Wis., 335; *Cornell* v. *Hichens*, 11 Wis., and the numerous authorities there cited.

The note and mortgage were purchased by plaintiff in due course of business, before maturity, for a valuable consideration, the note and mortgage giving no notice for what the notes were given, and no proof is given that plaintiff knew

of any equities, hence no defence which might have existed between the original parties can. defeat this action. Story on Bills, 220 ; Chitty on bills ; Parsons on contracts, vol. 1, 213, and cases cited in note.

While in a court of law, in a suit brought on the note, it might be necessary to transfer the note by endorsement, yet it is not so in a proceeding in equity, to foreclose the mortgage. The plaintiff took an equitable interest, which interest will be protected by the court. *Morris Canal and Banking Co.* v. *Fisher*; Am. Law Register, vol. 3, 425 ; *Mercien* v. *Cotten*, 34 Miss., 64.

The court will look at the intention of the parties to the original contract, and enforce that intent, which was to enable the Racine and Mississippi Railroad Company to raise money to build their road, and the notes and mortgage were designed by the parties to be put in the market and sold, and, like all bonds, payable to bearer, to pass the title by delivery. The note and mortgage is in the nature of a bond, and so intended, by the parties, when it was made, and millions of dollars are daily invested in these and similar securities, and it would be doing a violence to every principle of justice to permit the maker to put them on the market, knowing the manner they would be bought and sold, and when sued in the hands of *bona fide* holders, to hold this defence good. It would enable a party to take advantage of his own wrong. *Daniel P. Crosby* v. *Samuel M. Romb et al.*, decided by the Supreme Court of Wisconsin in 1863.

The guaranty of the Racine and Mississippi Railroad Company, attached to said note and mortgage, can, in no wise, diminish the legal liability of the maker to pay his obligation. It stands in the nature of additional security to the holder of the note and mortgage, but can, in no wise, diminish Bligh's liability.

The doctrine of recoupment does not apply here. The note was made payable to Henry S. Durand. He gave Bligh thirty shares of railroad stock for it, which was then worth

$3,000, or whether it was or was not, makes no difference, as Bligh received it.   The proof shows the stock became value-less in 1859.   There was no failure or want of consideration in the original transaction, but that subsequently the value of the consideration had depreciated.   Suppose the note and mortgage had been given for city lots.   Lots were high then, subsequently the city does not grow, and the lots become worth one hundred dollars.   Will it be contended that in a suit on the note and mortgage the difference between the value of the lot when the note was given and when the note is sued, can be recouped?   Clearly not.   Bligh holds the railroad stock, until it becomes worthless, which is his mis-fortune.   The remedy for the maker of the note to pursue, is to sue the Racine and Mississippi Railroad Company on the guaranty.   He made the note and mortgage, and put it in the market, for the purpose of raising money, knowing it would be used, and he relied upon his guaranty for his pro-tection against loss, and he must pursue his remedy against those who indemnified him.   The value of the stock, at the time the note was made, is the true criterion to determine the question of failure or want of consideration, and the court clearly erred in receiving evidence of its value when suit was commenced.   For these reasons, the judgment of the court should be reversed.

Messrs. LATHROP & BAILEY, for appellees, submitted the following points and authorities :

The note and mortgage for the stock, and the indemnity or guaranty of R. R. Co. against loss on the stock, and its promise to pay interest on the note until maturity, were made at the same time, and together constituted one trans-action ; and in fact, only entitled the mortgagee, or the rail-road company, to collect of the mortgagor on the note and mortgage, the cash value of the thirty shares of stock.

And as no action could be brought on the note and mort-gage until maturity, that was at least the earliest period when

the parties could have investigated the extent of Bligh's liability to pay, and at that time the stock was worthless, and has so remained.

And from the certificate of stock, it is apparent that Bligh was to have no real interest in the stock until payment of the note.

This transaction clearly shows that the guaranty made to Bligh was intended to balance against his obligation to the railroad company (or Durand, its trustee,) on the note and mortgage, and to protect Bligh from paying anything more than the actual value of the stock when the day of payment arrived; the railroad company assuming all risk of value of stock.

And to deny the defence in this action would not be enforcing the contract the parties made, but giving to it an entirely different effect from that intended, and imposing upon the defendants liabilities not contemplated by either party, and which they had done their utmost to avoid.

In *Charles Schuchmann* v. *Jacob Knoebel exr.,* &c., 27 Ill., 178, Justice BREESE says :

" There is a natural equity as to claims arising out of the same transaction, that one claim should compensate the other, and that the balance only should be recovered."

And the same doctrine is laid down and enforced in 2 Story's Eq. Jur., sec. 1433, and subsequently.

The defense under the guaranty goes directly to impeach the demand upon which this suit is brought, by showing that it never did in fact exist, and is within the principle of the case. *Piggott* v. *Williams,* 6 Madd. R., 95, cited in note to sec. 1436 of Story's Eq. Juris., where the solicitor was attempting to enforce a demand for services, and the defense was the negligence of the solicitor in the performance of the services; and this seems to have been allowed as an equitable set-off.

Had an action at law been brought to recover the mortgage debt, there could be no doubt of the right to set-off or recoup the damages under the indemnity or guaranty to Bligh, inasmuch as they all arose out of the same transaction. *Batterman* v. *Pierce*, 3 Hill, 171; *Read* v. *McAllister*, 8 Wend., 110; *Stow* v. *Yarwood*, 14 Ill., 424; *Babcock* v. *Trice*, 18 Ill., 420; *Schuchmann* v. *Knoebel*, 27 Ill., 185; *Sanger* v. *Fincher*, 27 Ill., 346.

And if we have no stronger claim, the maxim, "equity follows the law," would seem certainly to entitle us to as full a measure of relief as we should have had in a court of law, and had an action been brought there, to have recovered the same claim.

But the doctrine of recoupment came from the courts of equity, and "is in its nature and essence an equity doctrine." 2 Kent, 472, 473 and notes; also note A, 8 Wend., 110. And strange, indeed, would it seem, should the doctrine be found less efficient in a court of equity than in a court of law.

Messrs. LELAND & BLANCHARD, on the same side, submitted the following points:

The question is whether these damages, occasioned by the breach of said contract, guaranteeing Bligh *against any loss whatever upon said thirty shares of stock* could be set off or recouped in the suit to collect the mortgage money by foreclosure and sale of the premises. There was also a question as to whether there was a homestead right, and also as to the rate of interest. As this proceeding is one to obtain a judicial or forced sale, and not an exercise of the power voluntarily conferred, we claim that in this case, as it now stands, the Statute in relation to homesteads does apply. The interest should be no more then six per cent. in any event, and if the ante-dating the note was so that it should draw more than the legal interest, no interest at all should be allowed.

As the complainant is not the representative of one who was the holder of the note and mortgage, by assignment under the Statute, it is clear that the same defence can be made as though the mortgagee himself had filed the bill, and even if there had been a written assignment, the complainant in this proceeding occupies no better position than the mortgagee would have done.    *Olds* v. *Cummings*, 31 Ill., 188.

It was the duty of the purchaser of the mortgage to have enquired of the mortgagor whether there was any reason why it should not be paid.

Under our Statute, in relation to set-off, this claim for unliquidated damages would seem to be properly called a set-off against the note if an action at law had been brought upon it, and by the 3d section of chapter 21 of our Statute in relation to chancery, (Purple Stat., p. 139,) it is provided that a set-off shall be allowed in chancery, in suits for the recovery of money, in the same manner and with like effect as in actions at law.    The cases of *Edwards* v. *Todd*, 1 Scam., 463 ; *Nichols* v. *Ruckhells*, 3 Scam., 300, and *Kaskaskia Bridge Co.* v. *Shannan*, 1 Gilm., 15, establish the position, that the defence would have been a good one.

This, therefore, would have been a good defence in chancery, without the necessity of a resort to a cross-bill, and if there was no claim in equity and good conscience to recover any portion of the mortgage money, the bill should have been dismissed on a hearing upon original bill, answer, replication and proof, and a decree dismissing the bill would have amounted to a discharge of the mortgage by barring another suit for the same cause of action.

The cross-bill was, however, a proper measure of precaution in order to obtain the affirmative relief of a decree, cancelling and discharging the mortgage.

The phrase "set-off," however, is not as peculiarly applicable to the case as "recoupment," which is an expression rather more appropriate in a court of equity, and is in its nature and essence an equity doctrine, and as set-off, which

is also a doctrine which originated in equity, is more appropriate when there are two transactions, and recoupment, when the defence grows out of the same one, by cutting down the plaintiff's demand, by proof of some equitable cause, why he should not have it all, or any part of it. See Sedgwick on the measure of damages, p. 456.

However, it does not matter about the name we give things. The authorities cited clearly establish the right to resist a decree for the money mentioned in the note and mortgage, by cutting therefrom the amount of the damages sustained, and as the stock was entirely worthless when the debt matured — these damages equal the amount of the stock.

It is claimed on the other side that the depreciation of the stock at some time anterior to that when it became entirely worthless, should be the measure of damages, if we are entitled to any reduction.

The guaranty was not in relation to the value of the stock at any particular time, but was one *against any loss whatever.* It had no limit as to time. It, of course, applied to future depreciation, and if some reasonable limit is to be fixed by the law, surely no more appropriate one could be selected than that of the maturity of the promise to pay for the stock. Bligh was not to become the sole owner of the stock until then. The use of it and the right to the dividends were in the company till then, and the supposed dividends were to balance the interest on the note, which the company were to pay in consideration for its right to use the income on the stock.

What more fitting time than that of the maturity of the note for Bligh to determine whether he would pay the note in full, and redeem his stock, so as to own it in full, or pay the balance, if any, deducting his damages sustained by its depreciation? At and before this time, however, the stock became utterly worthless. The amount of the depreciation equalled the whole price, and the decree below was just and equitable, and it should stand.

The facts as stated herein are clearly and indisputably proven. The defence, if allowable, was one which totally defeats the claim of the complainant; and farther argument and authority are superfluous, on the question whether it was really necessary to pay the mortgage, and sue the utterly insolvent railroad company.

If there could be any possible doubt about applying the foregoing doctrines to the case, this fact that the railroad company is insolvent would have been sufficient to let in the defence. If otherwise, it might have been improper. *Keab* v. *McAllister*, 8 Wend., 117; *Gaylord* v. *Couch*, 5 Day, 230; *Robbins* v. *Holley*, 1 Monroe, 194; *Lindsey et al.* v. *Jackson et al.*, 2 Paige, 581; *Gay* v. *Gay*, 17 Paige, 369.

It may be a hardship upon the estate of Peck, to lose the amount paid for the note and mortgage, if what was paid was worth anything. And it is hard upon the widow and children of Bligh to lose their home. But if Peck blindly purchased, when he would not have done so, if he had enquired of Bligh about the circumstances, his representatives must sustain the loss, and not those of Bligh, who took the precaution to protect them against loss by a written contract.

The law protects the vigilant, and not sleeping, as Providence protects the strongest battalions.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

This was a bill in chancery to foreclose a mortgage, filed by the administrator of William Peck, against the widow and heirs of Alpha Bligh. The mortgage, and the note secured by it, were given by Bligh to H. S. Durand, who was President of the Racine and Mississippi Railroad Company, and bore date May 12, 1855, maturing in five years from the 10th of February, 1855. The bill averred, and the answer admitted, that Durand was only a nominal party to the note and mortgage, and that they were really given to the railroad company for its sole use and benefit. The complainant claimed the note and mortgage by virtue

of an instrument executed by the railroad company on the 30th of July, 1855, and guaranteeing to the "holder hereof" the payment of the note, this instrument being executed upon a separate paper, and attached to the note. It appeared, upon the hearing, that Bligh subscribed to thirty shares of stock in the railroad company; that he executed the note and mortgage in payment for said stock; that one Clough was the authorized agent of the company in procuring subscriptions, and that, at the same time with the execution of the note and mortgage by Bligh, Clough, as agent for the company, executed to him an instrument in writing, reciting the transaction, and guaranteeing him against loss on the thirty shares of stock. The execution of these different instruments was all one transaction, and Clough swears that he was authorized by the board of directors to give the guaranty. The stock became utterly worthless before the maturity of the note, and these facts are relied upon as an equitable defence against the note and mortgage.

The defendants, besides their answer, filed a cross-bill, asking that the note and mortgage be cancelled. The court below refused the relief prayed in the original bill, and decreed upon the cross-bill, that the complainant, Peck, and all persons claiming under him, should be forever barred from bringing an action on the note, except as against Durand or the railroad company, and that the administratrix of Bligh execute to the company an assignment of the certificate for said thirty shares of stock. The complainant appealed.

The instrument executed by Clough to Bligh, at the time the latter gave his note and mortgage, was as follows:

Whereas, Alpha Bligh has executed a note and mortgage in favor of Henry S. Durand, or bearer, bearing date on the 12th day of May, A. D. 1855, payable on the 10th day of February, A. D. 1860, for the sum of three thousand dollars,

with interest at the rate of ten per cent. per annum from and after the 10th day of February, 1855, which said note and mortgage have been executed by him to the said Henry S. Durand, for the purpose of loaning the said sum of three thousand dollars to pay for thirty shares of the capital stock in the Racine and Mississippi Railroad Company, by him subscribed. Now, therefore, in consideration of the relinquishment and assignment by the said Alpha Bligh to the said company of so much of the dividends on said stock which the said Alpha Bligh may become entitled to as shall be sufficient to pay the interest on said note, the said company agree to pay the interest on said note and mortgage until the same shall become due; and the said company, in consideration of the premises, agree to become responsible to the said Alpha Bligh for all money so loaned by the said Henry S. Durand on said note and mortgage. Said Bligh is hereby guarantied against any loss whatever upon said thirty shares of stock.

S. D. CLOUGH,
*Agent for said Company.*

Dated at Rockton, Ill., May 12, 1858.

There can be no question but that in a suit brought by the railway company to foreclose the mortgage, the defence here made would have been allowable on the ground of recoupment of damages or equitable set-off. The company, at the time of taking the note and mortgage, and as a part consideration therefor, expressly stipulated to protect Bligh from all loss on his thirty shares of stock. The stock having become worthless, Bligh, if he had paid his note, would have had a valid claim against the company for damages, and not having paid the note, could set up the damages in a suit brought by the company for its collection. The case would be precisely analogous to one in which a breach of the covenant against incumbrances in a conveyance of land is set up as a defence to a suit upon a note for which the conveyance

was given, and is as available upon the chancery as upon the common law side of the court.

It is urged, however, that the complainant in this suit is the assignee of the note and mortgage, that they were assigned before they fell due, and that this defence was thus cut off. The alleged assignment is not by endorsement upon the note, but by an instrument attached to it, and in the following form :

UNITED STATES OF AMERICA, }
    STATE OF WISCONSIN.      }

    Racine and Mississippi Railroad Co.—Bond.

Know all men by these presents, that the Racine and Mississippi Railroad Company, for a valuable consideration, hereby acknowledged, have guarantied, and hereby do guarantee, to the holder hereof the payment of the principal of the annexed promissory note and mortgage securing said note executed by Alpha Bligh to Henry S. Durand, or bearer, dated on the 12th day of May, 1855, payable in five years from the 10th day of February, 1855, with interest at the rate of ten per cent. per annum, payable annually; and said company further hereby guarantee to said holder the payment of the interest on said note and mortgage semi-annually, and both the principal and interest thereof shall be paid at their office in the city of New York, and that said note and mortgage may be transferred in connection with this bond (but not otherwise) to any party or purchaser whomsoever.

In witness whereof, the said company have caused this bond to be signed by their president, and attested by their secretary, and their corporate seal to be affixed this 3d day of July, 1855.

    [SEAL.]           H. S. DURAND, President.

A. J. REDBURN, Secretary.

It has been several times decided by this court that a guaranty of a note by the holder amounts also to an assignment and passes the legal title. Is this instrument such a guaranty? On its face it purports to be a bond of the railway company, and while it purports to guaranty the payment both of the principal and interest of the note, it guarantees that they shall both be paid in a manner different from that provided for in the note itself. By the latter, the interest was payable annually. By this bond it is guaranteed to be paid semi-annually. The note on its face was payable in Racine, Wisconsin. By this bond it is guaranteed to be paid in the city of New York. With what propriety can one instrument be said to guarantee another, when the alleged guaranty is, not that the contract shall be performed according to its terms, but in a manner materially different? But this instrument, regarded as an assignment, is not open to these objections alone. It provides that the " note and mortgage may be transferred in connection with this bond, but not otherwise." The reason, we presume, for the insertion of this clause, is to be found in the contract between the company and Bligh. It had agreed with him, itself to pay the interest on the note, and to protect him against loss on his stock. When, therefore, it issued this bond assuming obligations different from those of the note, and providing that the note should be transferred only in connection with the bond, it must be considered as issuing the latter as an independent instrument. Instead of seeking to assign and guarantee the note, which it could have done by a few words written thereon, it clearly sought to make its own bond the principal, and the note the incident. But whatever the object, the language referred to qualified the assignment, and was sufficient to put purchasers upon their guard.

But besides these objections to this instrument, when set up as an indorsement, there is another which is fatal, and upon which we more especially place the decision of the case. The note was in the following form:

" $3,000.

Five years from the 10th day of February, 1855, for value received I promise to pay Henry S. Durand or bearer, the sum of three thousand dollars, at his office in the city of Racine, Wisconsin, for money loaned together with interest from said 10th day of February, at the rate of ten per cent. per annum, payable annually at the office as aforesaid until said principal is paid.    Dated at Rockton, in the county of Winnebago, State of Illinois, this twelfth day of May, 1855.

A. BLIGH."

It will be observed that this note is payable, not to the company, nor even to Durand as its President, but to him individually, and could be assigned so as to give the holder the rights of an assignee, only in his name.    In no other way could the legal title to the note pass.    But the instrument relied upon as an assignment, is not the assignment of Durand.    It is, and purports on its face to be, a bond of the railway company, executed under their corporate seal, attested by their Secretary and purporting to be signed by Durand only as their President.    He assumes no obligations by this instrument.    No action would lie against him for a breach of its covenants.    It is not his guaranty, but that of the company.    Yet the note was payable to him, and as he has neither indorsed nor guaranteed it, where does the complainant get his legal title, by which alone he can claim the position and privileges of an innocent indorsee of negotiable paper?    He has none, and must hold the paper subject to the same equities and defences that could be set up against it in the hands of the payee.    On the common law side of the court a suit upon it could only be brought in the name of the payee, and on the chancery side, the same defence may be made as if the suit were thus brought.    The only assignment which will cut off the equities of the maker of the note, is an assignment made in conformity with the statute, and passing the legal title.    *Olds* v. *Cummings,* 31 Ill., 188.

The decree refusing the relief prayed in the original bill and granting that prayed in the cross-bill was proper and must be affirmed.

*Decree affirmed.*