## STEPHEN HASKELL

*v.*

## BARAK BROWN *et al*.

1. CHANCERY PRACTICE—*amendment of answer on hearing*. On the hearing of a suit in chancery, the court permitted the defendants to amend their answer, which was not sworn to, so as to admit proof of new facts in defense, against the objection of the complainant: *Held*, that this was a matter of discretion in the court, and as the answer was a mere pleading, the amendment was properly allowed to avoid a variance.

2. FORECLOSURE—*equitable set-off or recoupment*. Where a party subscribing to the capital stock of a railroad company, executed his note for his subscription, secured by mortgage on real estate, and the company at the same time guarantied to him that his annual dividends should pay the interest on the note, and that in consideration of the transfer of those dividends the company would pay the interest on the same, and indemnify the maker against the payment of any interest, and against the payment of the principal also, and it happened that there were no dividends, and the stock was worthless at the maturity of the note: *Held*, that, as against the company, on bill to foreclose, the facts could be set up as a defense, on the ground of recoupment or equitable set-off, and that the same rule applied to a purchaser of the note and mortgage before maturity on bill by him to foreclose.

3. ASSIGNMENT—*to cut off defense*. Where a railroad company negotiated one of its bonds, and delivered with it the note of the defendant as security, but without indorsement, but the bond contained an assignment of such note, which was made transferable with the bond, and not otherwise: *Held*, that the bond of the company was the principal and the note the incident, and was not transferred as an independent instrument, and that such a transfer of the note should have put the party receiving it and all others purchasing it, upon their guard as to any defenses the maker might have.

4. SAME—*rule in equity*. But even had the note been indorsed in the usual mode before maturity, the assignee by the proceeding in equity to collect the same by the foreclosure of a mortgage given to secure it, which is not negotiable, will take subject to any defense the maker had as against the original mortgagees, because in such suit the mortgage is the foundation of the suit, and the note is only the incident or evidence of the debt.

APPEAL from the Circuit Court of McHenry county; the Hon. THEODORE D. MURPHY, Judge, presiding.

30      HASKELL *v.* BROWN *et al.*      [Sept. T.,

Opinion of the Court.

Messrs. MOORE & CAULFIELD, and Mr. M. C. JOHNSON, for the appellant.

Mr. JAMES H. SLAVIN, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the McHenry circuit court, brought by Stephen Haskell, to foreclose a mortgage, he claiming as equitable assignee thereof. The note, to secure which the mortgage was executed, was made by one Barak Brown to the Kenosha and Rockford Railroad Company, payable in five years from the 10th day of May, 1857, with interest thereon at the rate of ten per centum per annum, payable annually. The note and mortgage were assigned to complainant before maturity, and for a valuable consideration paid by him in money. It is alleged the whole amount is due, with interest from the 25th day of January, 1858, and that the land described in the mortgage is scant security for the note and interest due.

It is further alleged that Brown, on the 5th day of April, 1855, had executed a mortgage on the same premises to one Edwin Backus to secure the payment of one hundred dollars, and that he, Backus, long after the assignment of the first described note by the railroad company to complainant, namely, on the 3d of July, 1860, filed his bill, for the use of one Lyman Backus, in the McHenry circuit court, to foreclose this mortgage, making Brown and the railroad company defendants; that the railroad company was not brought before the court by the service of process or by publication, and that complainant had no notice of the pendency of such proceedings.

In this suit, on the 19th of November, 1860, a decree of foreclosure was rendered against Brown for one hundred and fifty-five dollars and fifty-four cents, principal and interest due upon the note. There was a sale under this decree thereafter, and Edwin Bachus became the purchaser for the sum of one

hundred and eighty-three dollars and fifty-six cents, and on the following day assigned the certificate of purchase to one William G. Billings.

Brown, Edwin and Lyman Backus and Billings were made defendants, together with the Kenosha and Rockford Railroad Company, and other railroad companies supposed to have an interest in the subject matter, were made defendants, who were all brought into court by personal service or by publication.

The prayer of the bill was to allow complainant to redeem from the sale under the Backus decree, and all rights acquired by the sale thereunder be vested in complainant.

Brown and Billings answered, denying the power of the railroad company to take the note; that it was executed without any consideration; and Brown further alleges that he was requested by the authorized agents of the company to subscribe to its capital stock the sum of five hundred dollars, and, as an inducement so to do, they represented to him that the company was duly organized, and was entirely solvent, and did not need to use the said stock or the avails thereof for the construction nor for the equipment of the road, for the reason that the company had already, in money paid for stock and raised from the bonds of the company sold in the market at par, sufficient to pay all expenses for constructing, equipping and operating the road, and that the stock which defendant Brown was requested to subscribe, would be a good investment, and he could receive and hold it without paying for it, by reason that dividends would be paid on it more than sufficient to pay the interest on the note.

It was further alleged that the railroad company did then and there warrant and agree that if he, Brown, would make and sign the note and the mortgage in question, the company would issue to him an equal amount of paid stock in the company, which was worth dollar for dollar, and upon which the company would pay annual dividends of at least ten per cent; and that it was then and there agreed by parol and in writing, that the dividends which would be paid to him

annually, on the stock, should be equal in amount to the annual interest on the note; and that the company, in consideration of those dividends, would pay the interest on the note and indemnify Brown against the payment of any interest and note also. The defendants allege that, influenced by these representations, Brown executed the note and mortgage, and that they became part and parcel of the agreement.

The defendants deny the legal existence of the company and its authority to take a note and mortgage, and allege that they had no money or property or credit wherewith to construct, equip or operate their railroad; that the capital stock was then and is yet, and always will be, worthless; that there has never been any dividend on the stock, no earnings or money wherewith to make dividends, and that the company was then, and yet is, and always will be, insolvent; that their bonds were worthless in the market, all of which was well known to the railroad company, and its agents then well knew, and that they knew their representations to be false when they made them, and that they were made with intent to defraud the defendant Brown. They deny that any certificate of stock was ever issued to defendant Brown, or to any one for him; that the company did not pay the interest on the note, nor indemnify defendant Brown against it, although the company had in its own hands all the earnings of the road, and all its money and property. They allege that, if complainant bought this note and mortgage, he did so of his own wrong, and with full knowledge of all these facts.

To this answer a replication was put in, and the cause went to a hearing, which resulted in a decree dismissing the bill.

To reverse this decree the complainant appeals.

On the hearing, one Asa Farnam being under examination as a witness on behalf of the defendants, when interrogated about a matter which complainant insisted had not been alleged in the answer, the court, on application of defendants, permitted an amendment to the answer, so as to include the matter to which the testimony was applicable, and against the objection

of complainant, to which complainant took exception, and assigns it as one of the errors.

We do not think there is any force in this objection, as the answer was not under oath. It was mere pleading, which, to subserve the purposes of justice, can at all times, before judgment or decree, be amended, in the discretion of the court. The rule is correctly stated in *Martin et al.* v. *Eversal et al.* 36 Ill. 222, in which case there was a sworn answer. This court said, in chancery proceedings the court will permit an amendment on the hearing for the purpose of avoiding a variance. In the cause before us, the amendment was made to avoid a variance. The case of *Moshier* v. *Knox College*, 32 Ill. 155, is to the same effect, and so is *Wylder* v. *Crane*, 53 ib. 490.

There is much of the answer of defendant Brown which could not avail as a defense, even against the railroad company, if proved, but it is distinctly alleged in the answer that the company, by its agents, guarantied that the stock subscribed by Brown would pay annual dividends of ten per cent at least, and that it was agreed, at the time of the subscription, both by parol and in writing, that those dividends, which would be paid to him annually on the stock, should be equal in amount to the annual interest on the note, and that, in consideration of those dividends, the company would pay the interest on the note and indemnify Brown against the payment of any interest and against the payment of the note also.

This agreement was in the following form, as found in the record:

Incorporated by the State of Illinois, 1857.

No. 256.   Five shares.

KENOSHA & ROCKFORD RAILROAD COMPANY.

Capital, $800,000.                    Shares, $100 each.

This is to certify that Barak Brown is entitled to Five Shares in the Capital Stock of the Kenosha & Rockford Railroad Company, upon which shares each One Hundred Dollars

34          HASKELL *v.* BROWN *et al.*          [Sept. T.,

Opinion of the Court.

have been paid. Transferable personally or by attorney on the books of the said company, on surrender of this certificate.

{ K. & R. R. Co. Seal. }  The said Barak Brown having executed a Note and Mortgage in favor of the Kenosha & Rockford Railroad Company, or order, bearing date on the 11th day of April, 1857, payable in five years from the 10th day of May, 1857, for the purpose of loaning the money to pay for said stock, and having assigned to this company enough of the interest and dividends of said stock to pay the interest on said mortgage, and this company having guarantied the payment of the principal and interest upon said mortgage, the holder of this certificate will not receive any dividends until said note is paid. Whereupon he will be entitled to have all the surplus dividends over and above what has been paid by this company on said note.

E. H. BAKER, *Sec.*          C. H. SPAFFORD, *Pres.*

A. C. SPAFFORD, *Treas.*

This agreement adhered to the mortgage, and in a suit to foreclose it by the original mortgagee, the railroad company, it could be set up as a defense on the ground of recoupment or equitable set-off. It is an express stipulation on the part of the company, made at the time of the execution of the note and mortgage, that the company would protect them, and indemnify Brown against the payment of the note and the interest.

There having been no dividends, the stock being worthless, Brown, had he paid the note, would have had a valid claim against the company for damages; and not having paid the note, could set up the damages in a suit brought by the company for the collection of the note. This was said by this court in *Peck* v. *Bligh et al.* 37 Ill. 317, a case, in its leading facts, not essentially different from this.

But it is said in this case, this suit is brought by an assignee for value, and without notice of any defense, and before maturity of the note.

Appellant, in his testimony taken on the hearing, states that neither the note nor mortgage was assigned to him by any written assignment; that he purchased them as securities transferable by delivery, and took them in that way only. Again, he states he purchased the note, with the mortgage referred to, of Joseph D. Smith, in 1858 or 1859, and paid therefor four hundred and fifty dollars—bought it for an investment, without notice of any defense to it.

The record contains this exhibit, introduced in evidence by the defendant Brown:

No. 67.         UNITED STATES OF AMERICA.         $500.00

State of Illinois.

KENOSHA AND ROCKFORD RAILROAD COMPANY.

*Know all Men by these Presents :* That the Kenosha & Rockford Railroad Company is justly indebted and promises to pay to Stephen Haskell, or bearer, Five Hundred Dollars, on the 10th day of May, 1862, at the People's Bank, in the city of New York, together with interest thereon from and after the 10th day of May, 1857, at the rate of ten per cent per annum, payable on each 10th day of November and May, semi-annually thereafter, on the presentation and surrender of the annexed coupons at said bank. For the payment whereof, the said company hereby bind themselves firmly by these presents, and for the better security of such payments being made to the holder hereof, the said company have assigned and transferred, and by these presents do hereby assign and transfer to the said holder of this bond a certain note for the sum of Five Hundred Dollars, executed by Barak Brown, together with a mortgage given collateral to and for the purpose of securing the payment of the same, dated on the 11th day of April, 1857, payable in five years from the 10th day of May, 1857,

36     HASKELL *v.* BROWN *et al.*     [Sept. T.,

Opinion of the Court.

with interest at the rate of ten per cent per annum, which said note and mortgage are hereto appended, and are transferable in connection with this bond to any parties or purchaser, whomsoever, and not otherwise. And the said company do hereby authorize and empower the holder of this bond at any time, in case said company shall fail to perform any of the foregoing stipulations by neglecting to pay either principal or interest on this bond when the same shall become due, to proceed and foreclose the said mortgage, or take such other legal remedy on said note and mortgage against said mortgagor, or against this company, on this present bond, or on both, as shall seem proper and expedient to said holder hereof. The holder hereof may surrender the same, with the securities and unmatured coupons attached, to the secretary of this company, at any time within five years from the date hereof, and receive in full payment of the principal of the same.

Five (5) Shares of the Capital Stock of said Company fully paid.

In testimony whereof the said Company have hereto caused to be affixed their corporate seal, and these presents to be subscribed by their [SEAL.] president and countersigned by their secretary. By order of the board of directors, this 1st Oct. 1857.

E. H. BAKER, *Sec.*        C. H. SPAFFORD, *Pres.*

This exhibit explains the nature of the transaction by which appellant became possessed of this note. It shows a purchase by him of one of the bonds of this railroad company, the payment secured by this note and mortgage in controversy. This bond was attached to the mortgage, which was transferred with the bond and by that instrument. This corroborates the testimony of appellant, that neither the note nor mortgage was assigned to him by any written assignment; that he purchased them as securities transferable by delivery, and took them in that way only.

As was said by this court in *Peck* v. *Bligh et al. supra,* it has been several times decided by this court that a guaranty of a note by the holder amounts also to an assignment, and passes the legal title.

In that case, as in this, the assignment was not by endorsement on the note, but by an instrument attached to it similar to the above exhibit.

The instrument in that case provided, as in this, that the note and mortgage might be transferable, in connection with this bond, to any party or purchaser, and not otherwise.

The reason for the insertion of this clause is, perhaps, to be found in the contract between the company and Brown, that they would pay the note and interest.

When, therefore, it issued this bond to appellant, providing as it does that the note and mortgage should be transferred only in connection with the bond, it must be considered as issuing the latter as an independent instrument, and instead of seeking to assign and guarantee the note, which it could have done in a few words written upon it, it sought to make its own bond the principal, and the note and mortgage the incident. *Peck* v. *Bligh et al. supra.* A transaction so worded should have put the party to it, and all other purchasers, on their guard.

But admitting there was an assignment of this note in the usual mode of assigning such papers, it carried the mortgage with it, as an incident, but only in equity. The mortgage was not assignable at common law, nor was it assignable under our statute. The assignment of the note, therefore, effected only an equitable transfer of the mortgage.

As was said in *Olds* v. *Cummings,* 31 Ill. 188, mortgages are not commercial paper. That is based upon personal credit, and the reliance of a purchaser of such is upon personal security. When a remedy is sought upon such paper, all the rights and defenses incident to commercial paper will be enforced in the courts of law. But where the remedy is sought

38          HASKELL *v.* BROWN *et al.*      [Sept. T.,

Opinion of the Court.

through the medium of the mortgage, when that is the foundation of the suit, and the note is used merely as an incident to ascertain the amount due on the mortgage, then the courts of equity, to which resort is had, must pause and look deeper into the transaction, and see if there be any equitable reason why it should not be enforced.

When resort is had to a court of equity to foreclose the mortgage, that court will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself, and this, regardless of the fact that the assignee of the note may have purchased it in good faith, and before maturity.

The court further say, he who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor.

The assignor here is the railroad company, and it can not be denied its written agreement to pay this note and mortgage could be set up as a defense, were it seeking to foreclose the mortgage.

This agreement adhered to the instrument, in equity, and could be available as a defense there, against them. It is equally so against appellant, for he stands in no better position in a court of equity than the original mortgagee, the Kenosha and Rockford Railroad Company.

Appellant having no right to foreclose this mortgage, can have none to redeem from the sale under the Backus' decree.

The decree of the court below is affirmed.

*Decree affirmed.*