# Robert Cameron v. Christopher B. Bouton and James G. Wright.

1. ESTOPPEL—*To Deny Indebtedness.*—When a person makes his promissory note payable to his own order, indorses the same and delivers it to another person and gives to such other person full authority in writing to pledge such note, which is done, he will be estopped from denying such authority or that he owed the full amount of the note.

2. MORTGAGES—*What an Assignee Takes.*—The assignee of a mortgage takes it subject to any defense which the mortgagor would have against it in the hands of the mortgagee or assignor.

Mortgage Foreclosure.—Error to the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1897. Reversed in part and remanded. Opinion filed December 16, 1897.

MATZ & FISHER, attorneys for plaintiff in error; GEORGE W. SMITH, of counsel.

The law is well settled in this State that when resort is had to a court of equity to foreclose a mortgage or trust deed, that court will let in any defense against the assignee of the mortgage which would have been good against the mortgage in the hands of the mortgagee himself, and this regardless of the fact that the assignee may have purchased

the note and mortgage in good faith and before their maturity.   Kleeman v. Frisbie et al., 63 Ill. 482;  Haskell v. Brown, 65 Ill. 37;  Petillon v. Noble, 73 Ill. 567;  Towner v. McClelland, 110 Ill. 542;  Himrod v. Gilman, 147 Ill. 293; Humble v. Curtis, 160 Ill. 193;  McCormick v. Buehler, 67 Ill. App. 73;  McAuliffe v. Reuter, 166 Ill. 491.

HECKMAN & ELSDON, attorneys for defendant in error Christopher B. Bouton.

Gehr was constituted by the Camerons their agent for the disposition of the note and trust deed in question with-out limitation as to his authority when the note and trust deed were made and placed in his hands.   They are bound by his acts.   Silverman v. Bullock, 98 Ill. 11;  Otis v. Gard-ner, 105 Ill. 436;  Broom's Legal Maxims, 715;  2 Pomeroy, Equity Jurisprudence, Sec. 710.

LEE & HAY, attorneys for defendant in error James G. Wright;  WILLIAM BROWN, of counsel.

An assignment of a portion of a chose in action will be protected in equity.   The legal holder will become a trustee for the benefit of the assignee of the portion.   Pomeroy v. Manhattan Life Ins. Co., 40 Ill. 398;  Gillett v. Hickling, 16 Ill. App. 392;  Phillips v. Edsall, 127 Ill. 547;  Hutchinson v. Simon, 57 Miss. 628;  Story's Equity Jurisprudence, Sec. 1044.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

The defendant in error Bouton, being the legal holder for value of a promissory note made by Arthur C. Gehr for the sum of $5,000, and holding, as collateral security for the payment thereof, a promissory note for the sum of $11,000, executed by the plaintiff in error, Robert Cameron, payable to his own order and indorsed in blank, and secured by a trust deed of real property executed by said Cameron and Sarah McC. F. Cameron, his wife, all of which instru-ments are hereinafter described, filed a bill for the foreclosure of said trust deed, setting up the said instru-

ments and also two certain writings dated, respectively, May 3d and July 27th, 1893, which will be more particularly referred to hereafter, alleging that the defendant in error James G. Wright claimed some interest in the Cameron note, making Wright Cameron and wife and others, defendants, and praying as is usual in such cases. The defendants answered, and defendant in error Wright filed a cross-bill in which he set up a promissory note for the sum of $7,700 executed to him by Arthur C. Gehr, and a certain assignment from Gehr to him of his, Gehr's, interest in the Cameron note and trust deed, subject to the rights of defendant in error Bouton, who, at the time of the assignment to Wright, held the note and trust deed as collateral security, as aforesaid. Answers were filed to the bill and cross-bill and replications to the answers. It is unnecessary to state the pleadings more in detail, as it was not objected on the hearing that any evidence was introduced which was inadmissible under the pleadings, or that there was any variance between the allegations and the proofs. The cause was heard on the pleadings and the testimony of witnesses examined and documents produced in open court.

There were two pieces of property described in the trust deed, of which one belonged to Robert Cameron and the other to his wife, Sarah McC. F. Cameron, and the court, by its decree, dismissed the cause as to the property of Mrs. Cameron for reasons stated in the decree. The court found that there was due to defendant in error Bouton the sum of $6,022.78, and that there was due to the defendant in error Wright the sum of $2,047.50; that Bouton's was the prior lien, and that Wright was entitled to recover, to the extent of his debt, the balance found to be due upon the Cameron note after and subject to the amount found to be due to Bouton.

The court further found that there was due from plaintiff in error Robert Cameron, on his said note, the sum of $12,996.82, and entered a decree in accordance with these findings, and for the sale of the premises of plaintiff in error described in the trust deed, etc.

The following are uncontroverted facts in the case:

The plaintiff in error executed a promissory note of date April 1, 1893, payable to his own order, and due in one year after the date thereof, for the sum of $11,000, with interest at the rate of six per cent per annum, payable half yearly, principal and interest payable in gold coin of the United States, at the office of Arthur C. Gehr & Co., and indorsed said note in blank, and delivered it to Arthur C. Gehr. It is recited in the note that it is secured by trust deed on real estate in Cook county, Illinois. Attached to the note were interest coupons. To secure payment of the note, Robert Cameron and Sarah McC. F. Cameron, his wife, executed to Arthur C. Gehr a trust deed of the same date as the note, conveying certain real property in Cook county, Illinois, described as lot 4 in Lawrence Proudfoot subdivision, etc., and lot 6, etc., in Wrightwood, which trust deed was acknowledged by Cameron and wife, and was recorded in the office of the recorder of deeds of Cook county April 5, 1893.

Subsequently, and on the day of its date, the Camerons signed and delivered to Arthur C. Gehr a paper, of which the following is a copy:

"CHICAGO, May 3d, 1893.

ARTHUR C. GEHR, 114 Dearborn St.

You are hereby authorized to borrow such an amount upon my note for $11,000, dated April 1, 1893, secured by a deed of trust, as you may require. The said note was deposited with you to secure you from loss by reason of your having signed a contract for the purchase of the property on Barry avenue, for my benefit. I have received the sum of $1,000 on account of said note, and in giving you my consent to raising additional amounts on said note, I rely upon you to see that such amounts are paid promptly, though legally I authorize you to use said note for your benefit and accommodation, at its face value at your discretion.

ROBERT CAMERON.

SARAH F. CAMERON."

After receiving this paper, and about May 20, 1893, Arthur C. Gehr borrowed from Frederick W. Straus, on his, Gehr's,

sixty day note, the sum of $6,000, pledging the Cameron note and trust deed as collateral security. July 19, 1893, Gehr, being unable to meet his note at maturity, applied to Straus for an extension of his note, which Straus refused to grant, unless he, Gehr, should bring Mr. Cameron, and that Cameron would make a satisfactory statement in reference to the note and trust deed. Gehr then sent for Mr. Cameron, who came and signed a paper, of which the following is a copy :

"CHICAGO, July 27th, 1893.

I, the undersigned, Robert Cameron, do hereby declare that I did on the first day of April, 1893, execute one promissory note, payable one year after date, to the order of myself and by me indorsed in the principal sum of $11,000, with interest thereon at the rate of six per cent. per annum, payable half yearly, on the first day of October and of April in each year, without grace, at the office of Arthur C. Gehr & Company, in Chicago, interest evidenced by two coupon notes of even date; that the said sum of $11,000 was paid me by Arthur C. Gehr & Company, and that said Arthur C. Gehr & Company, upon the execution thereof, became the owner of said notes and coupons and had full authority to negotiate or otherwise dispose of the same for their own use and benefit.

Said note and interest aforementioned is secured by trust deed, executed by me, on real estate in Cook county, which said trust deed bears document number 1,843,226, recorded April 5, 1893, in book 4289 of records, page 36.

ROBERT CAMERON.

Signed in presence of :
    B. J. WERTHEIMER,
    F. W. STRAUS."

Gehr's note was then extended by Straus, and was paid in full in about thirty days from that time.

August 17, 1893, Arthur C. Gehr borrowed from Christopher B. Bouton $5,000 on the note of Arthur C. Gehr & Co., of date August 17, 1893, for the sum of $5,000 in gold coin of the United States, with interest at seven per cent per annum,

payable annually after maturity, the note being payable to the order of the makers and indorsed by them.

After the signature to the note is a recital, signed as is the note, to the effect that the Cameron note and trust deed are transferred and assigned to the legal holder of the note of Arthur C. Gehr & Co., as collateral security. The note and trust deed were delivered to Bouton. Arthur C. Gehr received the amount of $5,000 on the note secured as stated, from money belonging to Christopher B. Bouton, and used $3,000 of it in paying his note to Straus. Arthur C. Gehr did business under the name of Arthur C. Gehr & Co. He was Arthur C. Gehr & Co.

The Cameron note and trust deed were originally given under these circumstances: Plaintiff in error was desirous of purchasing a piece of property on Barry avenue in the city of Chicago, which belonged to the minor heirs of one Bruschke, deceased, and had been negotiating with the administrator of the estate and the guardian of the minors for the purchase.

Arthur C. Gehr's deceased father had been, and he was, the confidential adviser of the Camerons, and to him Robert Cameron applied for advice in relation to the matter. The property was incumbered for $5,000 by mortgage, and Cameron was willing to pay $10,000 for the property, being $5,000 for the equity belonging to the estate. Gehr advised him that he could not procure the title from the administrator and guardian, and that the better way would be to have a foreclosure and sale, and that by purchasing at the sale, the title could be procured after the lapse of fifteen months from the sale in the event of non-redemption, and it was arranged that Gehr should bid in the property for him at the sale. Gehr attended the foreclosure sale about March 2, 1893, purchased the property for about $5,000 in his own name, and March 3, 1893, a certificate of sale was issued in his own name, which he received about two weeks later, and sold and assigned absolutely, to J. G. Wright. Subsequently and about April 5, 1893, the Cameron note and trust deed were executed.

March 2, 1893, Gehr made an agreement in writing with Charles Kriewitz, guardian of Louis and Ecenia Bruschke, minors, in which, after reciting the decree of sale and the sale of lots 29 and 30 in Oak Grove addition to Chicago (being the Barry avenue property), and that he had bid at said sale the sum of $10,000, the same being the highest and best bid, he, Gehr, agreed that he would pay the sum found due by the master and costs and expenses of sale, being $4,918.43, to the master on receipt of the certificate of sale, the balance to be paid in cash on or before the day of expiration of the time of redemption, if the property should not be redeemed, and on the further condition that the agreement should not impair or affect in any manner the lien or rights of the legal holder of the certificate. It was further agreed that Gehr should pay into the Circuit Court $5,081,57, being the balance of said $10,000, less the interest on $4,918.43, at the rate of six per cent per annum, and less, also, such other sums as he might find necessary to pay for taxes for the years 1892 and 1893, and for insurance against fire. This agreement was signed by Gehr and Kriewitz. Following the signatures to the agreement, and dated May 2, 1893, which was six weeks after the assignment of the certificate of purchase to Wright, is the following:

" For value received I hereby sell, assign, transfer and set over to Robert Cameron, Chicago, Illinois, all my right, title and interest in and to the within contract for sale, and for myself, my heirs, executors, administrators and assigns, I agree that upon the delivery of the within master's deed, I will convey said land to Robert Cameron, who has delivered to me his note for $11,000 secured by trust deed upon land in Cook county.

Chicago, May 2, 1893.

ARTHUR C. GEHR.    [SEAL.] "

The Cameron note and trust deed were made to secure Gehr against loss by reason of his undertaking to purchase and procure title to the Barry avenue property.

March 16, 1894, Gehr borrowed from James G. Wright $7,700, and as evidence of his indebtedness, executed to

Wright a promissory note of that date, for the sum of $7,000, due March 17, 1894, with interest at the rate of seven per cent per annum, and payable to the order of James G. Wright, accompanied with a power of attorney to confess judgment. At the same time, to secure payment of the note, he assigned and transferred to Wright by a written instrument under his hand and seal his, Gehr's, interest in certain property. The assignment, after reciting other interests, concludes as follows:

" Also all right, title and interest in and to a certain note for the sum of eleven thousand dollars ($11,000), made by Robert Cameron and dated April 1, 1893, secured by a deed of trust recorded in the recorder's office of Cook county, Illinois, in book 4289 of records, at page 36, subject to an incumbrance or loan upon said note of the sum of five thousand dollars ($5,000), for which said note is pledged with Walter Tod & Co., of Chicago, Illinois.

Witness my hand and seal this 16th day of March, A. D. 1893.

ARTHUR C. GEHR.   [SEAL.] "

Tod & Co. acted as the agents of defendant in error, Christopher B. Bouton, in making the loan, and held the Cameron note and trust deed as Bouton's agents, and about April 19, 1894, a note of which the following is a copy, was delivered to them:

" CHICAGO, April 19, 1894.

To Messrs. WALTER TOD & Co., City.

Gentlemen: We have assigned to James G. Wright our equity in the $11,000 note of Robert Cameron held by you as collateral to our note for $5,000. Will you please hold the same to his order subject to our debt, and oblige.

Very truly yours,

AUTHUR C. GEHR & Co."

Gehr obtained from Wright the money which he paid on the delivery to him of the certificate of purchase of the Barry avenue property, and the sale and assignment of the certificate to Wright. Gehr never did anything in pursuance of his undertaking to procure the title to the property

for Mr. Cameron, nor was he put to any expense whatever, nor did he suffer any loss by reason of that undertaking, so far as appears from the evidence.

By written instruments of date, respectively, November 4, 1893, and June 23, 1894, Gehr assigned to plaintiff in error, Cameron, certain interests in option contracts of doubtful value. These assignments were subsequent to the loan from Bouton, and were made to secure Cameron against loss, by reason of his note and trust deed having been pledged as collateral security for the Bouton loan. About the middle of April, 1893, Gehr, by the request of Cameron and wife, loaned them $1,000 on the security of the Cameron note and trust deed. Cameron paid back $300 July 29, 1893, prior to the Bouton loan, and $600 after the Bouton loan was made, leaving unpaid only $100.

Upon the hypothesis, which is at least doubtful, that a court of equity would, under the circumstances disclosed by the evidence, lend Gehr any aid whatever, on a bill filed by him to foreclose the Cameron trust deed, he could only obtain a decree for the unpaid money advanced by him, with interest. Such being the case, the solicitors or plaintiff in error rely on the rule announced in Old v. Cummings, 31 Ill. 188, and approved in a number of subsequent cases, that the assignee of a mortgage takes it subject to any defense which the mortgagor would have against it in the hands of the mortgagee or assignor. That this rule, first announced in Old v. Cummings, and approved and adhered to in a long line of subsequent decisions, is the thoroughly settled law of this State, does not admit of doubt or controversy. The solicitors of defendants in error do not contend the contrary. Their contention is that the rule has no application to the facts in this case.

There was a conflict in the evidence as to whether Gehr had a general authority from the Camerons, or either of them, to negotiate the Cameron note. The relation which existed between Gehr and the Camerons was testified to by Gehr, as follows: " I have known Mrs. Cameron since the spring of 1883. My relations with her family have always

been extremely pleasant.  I did considerable business for her and her family.  Prior to my father's death he had been the adviser of the family for a great many years.  He was their confidential adviser on a great many business matters; after his death I continued to occupy the same relations with them.  I kept their papers in my vault, at their convenience—the abstract and a good many of the papers they had relating to land."  In respect to the writing of May 3, 1893, Mr. Cameron testified that in May, 1893, Gehr said to him: "Mr. Cameron I want to ask you for a little favor this morning.  I says, 'Mr. Gehr, if I can do you a little favor I will do it.'  So at that time my wife came out just as he asked me, and she heard the conversation with Mr. Gehr and me.  The favor he wanted was to use the notes for $1,500 for ninety days, and my wife spoke up and she said, 'We owe Mr. Gehr $1,000 now;' and she certainly thought Mr. Gehr was all right for to let him use the notes for ninety days for $1,500."  The witness says that Gehr then drew up the May 3d paper, and they, Cameron and his wife, signed it; that Gehr said it was a paper to give to the people who were going to loan him $1,500, to show that he had authority to use it for that amount.

Mrs. Cameron testified substantially as did her husband.  She testified: "I did not read the paper.  Mr. Arthur Gehr drew it up.  He asked me to get him a paper and pen and ink and he wrote it, and he said, 'I want you and Mr. Cameron to sign this paper so I can get that $1,500.'"

Gehr denies this testimony of these witnesses, saying, "I did not tell Mr. and Mrs. Cameron that I wanted to raise $1,500."  He also testified that nothing was said about the amount he would be limited to borrow on the notes.  The evidence with regard to the July 27th writing, tends strongly to show that it was given solely for the purpose of enabling Gehr to have his note to Straus extended for thirty days.

May 20, 1893, Straus loaned Gehr $6,000 on Gehr's note for sixty days, taking the Cameron note and trust deed as security.  July 19, 1893, Gehr called on Straus and informed him that he could not meet his note, that he only had $2,000,

and asked for an extension, which Straus refused to grant, unless he could see Cameron and satisfy himself as to the collateral security. Cameron was sent for accordingly, and the reason for his being sent for was, as Straus and Wertheimer testify, fully explained to him. When the paper was prepared and he was requested to sign it, he took it to his confidential adviser, Mr. Gehr, who was present. Cameron testified as follows: "I took the paper in my hand and went over to Mr. Gehr, and asked him what the paper meant. He told me 'I am going to get the money from Mr. Straus, and he don't like the looks of the paper your wife and you signed at the house, and wants you to sign this one.' I said to Mr. Gehr, 'Is it all safe for me to sign this?' 'Perfectly safe, Mr. Cameron,' he says, 'just the same as you and your wife signed at the house.'" He further testified, "Mr. Gehr knew that I could not read." Gehr himself testified that in the years 1892 and 1893 he understood Mr. Cameron could not read.

It appeared from the evidence of the Camerons that all the consideration ever received by them from Gehr for the Cameron note was $1,000, and they produced receipts showing that $900 of that amount had been paid to Gehr. Gehr did not deny this.

The foregoing evidence bore upon the question of the extent of Gehr's authority to negotiate the Cameron note, and on the amount due on the note, and would, on a bill filed by Gehr, the grantee in the trust deed, for foreclosure, be entitled to consideration by the court in connection with the other evidence. It would be, in such case, competent evidence, and could not properly be excluded. What weight should be given to it, would, of course, be for the court to decide.

It is evident, from the findings of the court contained in the decree, that the court excluded from consideration the testimony of the Camerons above referred to. The decree, after reciting the writings of May 3 and July 27, 1893, proceeds as follows:

"And the court further finds that the said defendants,

Robert Cameron and Sarah McC. F. Cameron, are estopped to deny that the said defendant Arthur C. Gehr, had full authority to pledge said principal note of the said Robert Cameron, and the said interest note or coupon accompanying the same, and the said trust deed securing the same to the complainant, for the full amount borrowed by the said defendant Arthur C. Gehr from the complainant therein, as aforesaid."

The finding, in another part of the decree, is as follows: " And the court finds that, by reason of the said writings so made and given to said Gehr by said Camerons, the said Robert Cameron and Sarah McC. F. Cameron are estopped from asserting that the said Robert Cameron does not owe the amount of said note of $11,000 of said Robert Cameron and the interest thereon, according to the provisions of said note and trust deed." These findings are conclusive that the court held, as matter of law, that the Camerons were estopped by the writings of May 3 and July 27, 1893, to deny that Gehr had authority to pledge the note for the full amount borrowed by Gehr from Bouton, and were also estopped to deny that Robert Cameron owed the full amount of the note, namely, $11,000 and interest.

It can not be contended that in defense of a bill for foreclosure of the trust deed by Gehr, the Camerons would be so estopped. How, then, can the writings of May 3d and July 27th estop them as to the defendant in error Bouton? The evidence is conclusive that neither Bouton nor his agent, Tod, who made the loan to Gehr for him, knew of either of those writings until after the loan was made.

The following occurred in the examination of the defendant in error Gehr, who was called as a witness by cross-complainant Wright:

Q. " Did you say anything to Mr. Tod, at all, about this paper, July 27, 1893, signed by Robert Cameron, which has been offered in evidence ? "

A. " Not beyond—except that I had authority to use that note."

Q. " What do you mean by saying ' not beyond ?' Did you mention that paper ? "

A.   " Well, I did not—I did not attempt, for instance—
he read what was there."

Q.   " Well, did you give him the paper ? "

A.   " I gave it to him when I took back the note and
trust deed from Mr. Straus' office."

Q.   " You took that paper with the $11,000 note and
mortgage after you had given your check to Mr. Straus,
and had obtained them from him, to Mr. Tod ? "

A.   " Yes, sir."

Q.   " That is it, isn't it ? "

A.   " Yes, sir."

Q.   " That is, before that time, Mr. Tod had given you
the check, which you had had certified and deposited in
your own bank to your own credit, about an hour before ? "

A.   " Yes, sir."

Q.   " That is right ? "

A.   " Yes, sir."

Q.   " So that when you went to Mr. Straus, and before
you delivered either the $11,000 note, or the trust deed, or
the paper signed by Robert Cameron, the money was in
your bank to your credit ? "

A.   " Yes, sir."

Bouton testified that he had no conversation with Gehr
before the loan was made.   The witness Tod, who made the
loan for Bouton, testified that he received the July paper
from Gehr at the same time he received the note and trust
deed, and the evidence is clear that he did not receive and
could not have received the note and trust deed until after
Gehr received the money and paid Straus, the note and
trust deed having been deposited with Straus as security
for his loan to Gehr.

Among the numerous findings in the decree in favor of
the defendants in error, Bouton and Wright, there is no
finding that Bouton knew of the existence of the paper of
July 27th.   With regard to the writing of May 3, 1893,
there is not a particle of evidence that either Bouton or his
agent, Tod, ever knew of it.   Gehr never seems to have used
it.   He says that, when he obtained it, he filed it away in

his vault with his other papers and never referred to it until he dug it out in the summer of 1894. Bouton and his agent, Tod, being ignorant of the writings of May 3d and July 27th at the time the loan was made, could not have been influenced by those writings in making the loan, and therefore the Camerons are no more estopped by reason of those writings as against the defendant in error Bouton than they would be if Gehr was the complainant in the bill.

In the recent case of McAulliffe v. Reuter, it was held that on a bill filed to foreclose a trust deed given to secure payment of a promissory note for $1,000, indorsed in blank to the complainant before maturity, the grantor in the deed might prove a private verbal arrangement between himself and the payee of the note, of which the complainant had no knowledge, that he, the maker, might pay the note in small installments as he might be able, and that in accordance with such arrangement, he had paid to the payee, the complainant's assignor, the whole of the principal and interest except thirty dollars, some of the payments having been made after the assignment of the note to the complainant, and without notice to the maker of the note of the assignment.

The Circuit Court having ruled it to be the law that the Camerons were estopped by the writings of May 3 and July 27, 1893, to deny that Gehr had authority to pledge the Cameron note for the full amount of the loan, and were also estopped to deny that Robert Cameron owed the full amount of that note, it must be presumed that the court did not weigh, or even consider, as affecting the case, the testimony of the Camerons, which tended to show that Gehr had not such authority and that Robert Cameron did not owe that amount. To presume otherwise would be to presume that the judge of the Circuit Court acted contrary to what he solemnly adjudged to be the law.

We are of opinion that the Camerons were not estopped by the writings in question from proving, if they could, what Gehr's actual authority was, or from proving that

Robert Cameron did not owe the full amount of the note, and that the exclusion from consideration of their evidence was erroneous.

The assignment to Wright of Gehr's interest in the note, subject to the prior assignment to Bouton, was, as heretofore stated, by a separate instrument, of date March 16, 1894, and was not such an assignment as is contemplated by Sec. 4, Chap. 98 of the Statutes, namely, by indorsement of the note. The assignment, therefore, was merely equitable, and Wright, the equitable assignee, took subject to any defense which Robert Cameron, the maker of the note, might have against Gehr. Osgood's Adm'rs v. Artt, 17 Fed. Rep. 575; Peck v. Bligh, 37 Ill. 317.

In the last case the court say: "The only assignment which will cut off the equities of the maker of the note, is an assignment made in conformity with the statute." Ib. 330; Haskell v. Brown et al., 65 Ill. 29.

In this case the note and mortgage were appended to the instrument which purported to assign the note, in which particular the case was stronger for the complainant than is the present case for cross-complainant Wright.

In Melendy et al. v. Keen, 89 Ill. 395, in which a bond issued by a railroad company purported, in terms, to assign the note secured by a mortgage which the complainant sought to foreclose, the court say: "The mortgage itself was never, in fact, assigned other than by what is contained in the railroad company's bond to which it was attached, except by delivery, which, at most, is only an equitable assignment and bars no equities existing between the original parties."

If Wright, as is contended by his solicitors, had knowledge of and relied on the papers of May 3d and July 27th, before and at the time of making the loan to Gehr, this can not avail him, because the utmost that can be claimed for those papers is, that they purported to authorize an assignment by Gehr; but in Wright's case there was no assignment effective to cut off equities as between the original parties to the note and trust deed. What has been

said in respect to the finding of the Circuit Court that, as matter of law, the Camerons were estopped, as heretofore stated, and the consequences of such finding, is as applicable to Wright, the cross-complainant, as to Bouton, the original complainant.

Defendant in error Bouton has assigned as cross-error the dismissal of the bill as against the property of Sarah McC. F. Cameron, described in the decree as follows:

Lot number six (6) in the subdivision of lots number seven (7), eight (8), nine (9) and ten (10), in block number eleven (11) in Wrightwood, said Wrightwood being a subdivision of the southwest quarter (S. W. $\frac{1}{4}$) of section number twenty-eight (28), in township number forty (40) north, range number fourteen (14), east of the third principal meridian, in the county of Cook and State of Illinois. Mrs. Cameron is not a party to the writ of error, either by service or appearance. The *scire facias* sued out by plaintiff in error runs only to the defendants in error Bouton and Wright. The court can not, therefore, adjudicate Mrs. Cameron's rights in the premises.

The decree will be reversed, except that part thereof dismissing the cause as to the property of Sarah McC. F. Cameron, heretofore described, which part of the decree is neither reversed nor affirmed, and the cause is remanded for rehearing. Reversed in part and remanded.