DAVIS & Co. v. DUMONT *et al.*

**Railroad**: SUBSCRIPTIONS: FRAUD. Subscriptions to a railroad company obtained by fraudulent representations of the plaintiffs, or to which they were privy, will not be enforced.

*Appeal from Linn Circuit Court.*

FRIDAY, JUNE 20.

THIS action is brought by plaintiffs as assignees of the following instrument:

"$100. For the purpose of aiding in the construction of the Sabula, Ackley & Dakota Railroad from Sabula, Iowa, to Marion, in Linn county, Iowa, as well as for value received, we promise to pay said Sabula, Ackley & Dakota R. R. Co. the sum of one hundred dollars, the same to be paid when said road is completed and the cars running on the same from Sabula to a depot to be constructed by said company at Marion, Iowa, and not before, with ten per cent interest from the time the cars on said road shall so run to said depot until paid.

"Dated this 27th day of June, A. D. 1871.

"A. B. DUMONT and
"GEORGE COOK."

Which contract is indorsed as follows:

"Pay A. K. Davis & Co., without recourse.
"SABULA, ACKKEY & DAKOTA R. R. Co.,
"By R. D. STEPHENS, *President.*"

The defendants answered, the second count of which is as follows:

"2d. That on or about the 20th day of June, A. D. 1871, the exact day the defendants are unable to state, the following named persons, to-wit: R. D. Stephens, I. M. Preston, D. T.

McAfee, Addison Daniels, S. W. Rathbun and H. P. Elliott, all being citizens of Marion, Iowa, and residing therein, went as a committee on behalf of themselves and the citizens of the town of Marion, Linn county, Iowa, to Stanwood, in Cedar county, Iowa, to meet and have a conference with representatives of the Sabula & Marion Railway Construction Company, which said representatives among others consisted of Alex. Mitchell, Russell Sage, W. L. Guerney, Chamberlain, D. A. Olin and F. P. James, in reference to the grading of the Sabula, Ackley and Dakota Railroad to Marion from Delmar Junction, the point to which said railroad was then graded, to Marion, Iowa, and it was the duty and purpose of said committee from Marion, consisting of the persons from said town of Marion, hereinbefore mentioned, to find out by said conference with the said representatives of said Sabula & Marion Railway Construction Company, the earliest, cheapest and most practicable way and manner in which said railroad might be graded to Marion, Iowa, and to report the result of said conference truthfully to the citizens of Marion, Iowa. That in pursuance of the object which said committee had publicly given out as the object and the intent of the conference with said representatives of the Sabula & Marion Railway Construction Company, said citizens of Marion, Iowa, to wit: the said I. M. Preston, A. Daniels, R. D. Stephens, D. T. McAfee, H. P. Elliott and S. W. Rathbun, had said conference with the said representatives of the said Sabula & Marion Railway Construction Company at Stanwood as aforesaid, and it was then represented to said committee from Marion, Iowa, by said representatives of the Sabula & Marion Railway Construction Company, that said company would not deal or make any contract for the grading of said railroad to Marion, Iowa, with the Sabula, Ackley & Dakota Railroad Company, but would deal and contract with the said committee from Marion, Iowa, as individuals or with some or with all of them, and that the Sabula & Marion Railway Construction Company would deal and contract with them or some of them for the grading of said road to Marion, Iowa, and would give them $3,000 per

mile for the grading of said railroad, and that said sum of $3,000 per mile, together with the local aid already raised along the line of said road, including the sum of $65,000 tax voted in Marion township, Linn county, Iowa, to aid in the construction of said road, was more than sufficient to pay for the grading of said road to Marion, Iowa; that at said conference at Stanwood as aforesaid, views and ideas were freely exchanged by and between the said citizens of Marion aforesaid and the said representatives of the said Sabula & Marion Railway Construction Company as to the probable cost and expense of the grading of said road to Marion, Iowa, as aforesaid; that it was then and there mutually agreed and understood by all persons in said conference, as well by the said citizens of Marion, Iowa, as the representatives of the Sabula & Marion Railway Construction Company, that the cost of grading said road to Marion, Iowa, from said Delmar Junction, would not exceed $3,000 per mile, and that the said sum of $3,000 per mile, when added to the local aid already raised for the grading of said road, would make it a profitable contract for any one who should obtain said contract to grade said road to Marion as aforesaid. That it was then and there, to wit: at said conference at Stanwood as aforesaid, told and represented to the said citizens of Marion, then and there present for the purpose of having them make the same representations to the citizens and inhabitants of Marion when they returned home, that there was already sufficient local aid raised with the $3,000 per mile which said Sabula & Marion Railway Construction Company proposed to give, to grade said road to Marion; and that said sum was more than enough to grade the same; and that it would be a profitable contract for any one to take said contract for grading said road to Marion; and that a large sum of money could be made by taking such contract; and said representatives of said Sabula & Marion Railway Construction Company also then and there promised and agreed that the said Sabula & Marion Railway Construction Company would meet said citizens of Marion who were then present at said conference, at Milwaukee, Wisconsin, in a few

days after said conference, at Stanwood, and would then and
there, to wit: at Milwaukee aforesaid, enter into a written
contract with them, the said citizens of Marion or some of
them, whereby and by said contract said Sabula & Marion
Railway Construction Company would give said $3,000 per
mile to the person or persons entering into said contract to
grade said road to Marion, Iowa: and the person or persons
agreeing to grade the same should have in addition thereto all
local aid already raised in Marion township, to wit: the
$65,000 tax already voted to aid in the construction of said
road. Many other things were also talked over at said confer-
ence which said defendants are now unable to state, but all of
which, as these defendants are informed and verily believe,
was to the purport and intent that sufficient local aid had
already been raised in Marion and Marion township to aid the
construction of said road, and that no more local aid should
be raised or sought to be raised in said town of Marion,
Linn county, Iowa. That after said conference had ended
and the said representatives of the said Sabula & Marion
Railway Construction Company had departed, it was mutually
agreed and understood by and between the said committee
from Marion as aforesaid, and before they returned to
Marion, that said committee or some of them would enter
into said contract or take some interest in the same, to
grade said road to Marion because of the profit there would
be in it, and would go to Milwaukee and enter into a writ-
ten contract with the said Sabula & Marion Railway Con-
struction Company to grade the said road to Marion, Iowa,
for the said $3,000 per mile and the local aid already raised.
That after said conference was ended, for the purpose of
making the contract for the grading of said road to Marion
still more profitable to the person or persons taking and enter-
ing into said contract, the said persons from Marion as afore-
said, to wit: I. M. Preston, R. D. Stephens, D. T. McAfee,
Addison Daniels, S. W. Rathbun and H. P. Elliott combined
and confederated together among themselves to raise an addi-
tional subscription from the citizens of the town of Marion to

aid in grading said road : and wickedly combined and con-federated together to misrepresent the result of said conference and the representations of said representatives of the Sabula & Marion Railway Construction Company ; and they wickedly combined and collusively agreed among themselves that when they returned to Marion they would call public meetings, and by speeches and representations then and there to be made in public meetings and by representations made by others whom they might induce to make the same, and by public and private solicitations to induce the citizens of Marion to give their notes or contracts whereby they would agree to give various sums of money toward aiding in the grading and construction of said road to Marion ; and that they would use the name of the Sabula, Ackley & Dakota Railroad Company for the purpose of raising said subscriptions, getting and obtaining said notes and contracts, and would make the same payable to said Sabula, Ackley & Dakota Railroad Company ; and it was corruptly and wickedly agreed among them that each of them would give their notes to induce others to do the same, but that the notes so given by them, the said persons so corruptly making said agreement, should not be binding or valid as against them, but should be returned and given up to the makers of the same after they had served their purpose of inducing others to give their notes or contracts, and that they the said persons so corruptly agreeing would call public meetings in Marion aforesaid, and appear in said meetings, and would announce in such public meetings the amount for which each would give his note ; and then, after a little time had elapsed, they would again rise in the meeting and announce an increase of the amount for which they would give their notes ; and it was also wickedly and corruptly agreed by and between said persons as aforesaid that they would fix the amount to be thus raised by subscription at the sum of $25,000, and that they would represent to the citizens of Marion that unless the whole of said sum was raised the road could not be graded.    That in pursuance of said wicked and corrupt agreement by and between the said I. M. Preston, Addison Daniels,

D. T. McAfee, H. P. Elliott, S. W. Rathbun and R. D. Stephens, they returned to Marion and called a number of public meetings in the court-house in the town of Marion, Linn county, Iowa, on or about the 20th day of June, A. D. 1871, which said meetings were largely attended by citizens and property-holders of the town of Marion, and then and there, to wit: in said public meetings and on the streets of Marion falsely and wickedly stated that said Alex. Mitchell and others whom they had met at Stanwood as representatives of the Sabula & Marion Railway Construction Company demanded and required that the citizens of Marion should raise $25,000 more by subscription for the Sabula, Ackley & Dakota Railroad Company, and that, unless the sum of $25,000 was raised by the citizens of Marion in addition to the $65,000 tax already voted by the township of Marion, said road could not and would not be graded to Marion; and that if the said citizens of Marion would raise said sum they, the said Alex. Mitchell and others whom they had met at Stanwood as aforesaid, would cause said road to be graded and built, and that they, the said R. D. Stephens, I. M. Preston, A. Daniels, H. P. Elliott, D. T. McAfee and S. W. Rathbun had to be in the city of Milwaukee in a few days thereafter to report to the said Alex. Mitchell and others whom they had met at Stanwood, their success in raising said $25,000, and if the sum was not raised in a few days it would not be of any use to raise it, as the road could not be graded and built without the said $25,000, and unless it was raised within a very few days by said citizens of Marion; and they further stated that said Alex. Mitchell and others said that unless said $25,000 was raised the road instead of being built to Marion would diverge and go in a south-westerly direction and not be built to Marion at all; which said representations were false and fraudulent.

They also gave their notes with the view and intent to induce other citizens to give their notes, and not with the view and intent to pay the same. They falsely and fraudulently represented that said $25,000 was required to be raised by the Sabula, Ackley & Dakota Railroad Company, whereas

said persons were not authorized to act for said Sabula, Ackley & Dakota Railroad Company or use the name of said company for said purpose, and said company had no knowledge that the same was being raised.

That in order to induce the defendants to give said note the said persons so engaged in obtaining the same as hereinbefore set forth represented to the defendants that many other persons of Marion had given their notes of like tenor to the one sought of the defendants, differing only in amounts, and mentioned among others the name of A. T. McDaneld and George W. Wilson. They also mentioned others whose names defendants cannot now state. Whereas said Geo. W. Wilson did not and had not given a like note to them and differing only in amount, and said statement was false; and the said A. T. McDaneld had given his note with the agreement and understanding by and with the said persons engaged in obtaining said notes that his note should be returned and given back to him by the said persons when it had been used by them to induce the defendants and others to give their notes as aforesaid, and that said McDaneld should never be required to pay said note. They also represented to defendants that they, the said I. M. Preston, D. T. McAfee, A. Daniels, S. W. Rathbun, H. P. Elliott and R. D. Stephens, had each given their notes or various amounts toward raising said subscription. That said representation was false, because said notes were given merely to deceive and were not to be paid, and were not to be binding.

That defendants being citizens and property-holders of Marion, being thus led to believe that their friends and neighbors were thus giving large amounts in good faith toward raising said subscription of $25,000, were induced to give their note sued on herein.

That many of the citizens of Marion and these defendants among them, relying on the representations, statements and acts of the said I. M. Preston, H. P. Elliott, A. Daniels, R. D. Stephens, S. W. Rathbun and D. T. McAfee as truthful and correct, were induced by the deceitful arts and contrivances,

false statements and corrupt acts of said persons last above named to give them their notes toward raising said subscription of $25,000, the defendants then and there giving and signing the note sued on in this action.

That after obtaining said notes as hereinbefore set forth, to the amount of about $25,000, the contract for grading said Sabula, Ackley & Dakota Railroad to Marion was let to R. D. Stephens, George W. Wilson, D. T. McAfee and A. K. Davis, who now compose the firm of A. K. Davis & Co., the plaintiffs herein, all of whom had knowledge of and participated in the fraudulently obtaining said notes, the note of these defendants included, and also now claim to own and hold said notes from the Sabula, Ackley & Dakota Railroad Company by reason of their contract for grading, and for the grading of said road to Marion, whereas, in truth and in fact, they have obtained said notes by fraud and collusion."

To this count of the answer plaintiffs demurred, which being sustained and judgment rendered therein, defendants appeal.

*I. C. Davis*, *N. M. Hubbard* and *Thomas Corbett* for the appellants.

*I. M. Preston & Son* and *J. B. Young* for the appellees.

MILLER, J. — The demurrer admits the material allegations of the count in the answer demurred to. The question, therefore, is whether these facts constitute a defense to the plaintiffs' cause of action. In other words, do these facts show that the contract sued on was obtained from the appellants through the fraud of the plaintiffs? In our opinion, if these facts are true, it is clear that a fraud of the grossest character has been perpetrated in the procurement of the obligation sued on.

Appellees, however, insist that the case falls within the holding in *First National Bank, etc.* v. *Hurford & Bro.*, 29 Iowa, 579. It was there held that in an action to recover on a subscription to aid in the construction of a railroad, wherein fraud in obtaining the subscription, and failure of consider-

ation, were pleaded by the defendant, the declarations of a person made at a public meeting where the subscription was made, who was not shown to have been authorized to speak for the company or those representing it, were not admissible in evidence. In that case the authorized agents of the railroad company make a written proposition to the citizens from which they had not varied and had not authorized any one else to do so; and the declarations sought to be given in evidence were those of one citizen made in a *meeting* of citizens held for the purpose of considering the written proposition, and made in the absence of the agents of the company and without their knowledge or consent.

The case before us is clearly distinguishable from that case. The fraud here alleged consists in a scheme to which the plaintiffs were parties and its object was by false and fraudulent representations to procure for themselves, from the citizens of Marion, $25,000 in donations of money, which they would be unable to procure by telling the truth, and being that sum in addition to what is necessary under a profitable contract to do the grading of the road to Marion, more than sufficient for that purpose having already been secured. The facts alleged show that the instrument sued on never had any legal existence or binding force by reason of the fraud practiced in its procurement.

It is urged on the part of the appellee that since appellants made no objections to the binding force of the instrument until the work of grading the road by plaintiffs has been completed, they are estopped from setting up the fraud now. It is sufficient answer to this position to remark that it does not appear that the plaintiffs incurred any expense or assumed any duty or obligation on the faith of this and the other similar subscriptions obtained under the same circumstances. On the contrary, it is alleged that the money previously secured for the grading of the road was more than sufficient for the purpose; that a large sum of money could be made by taking the contract to do the grading for the amount already secured, together with what the construction company agreed to pay, all of which

plaintiffs received, and that the plaintiffs were fully paid for the grading of the road, under their contract, without any knowledge by the railroad company of these fraudulent subscriptions. The plaintiffs, therefore, are in no manner prejudiced by appellants' failure to object before the work was completed.

The ruling of the circuit court in sustaining the demurrer was erroneous and its judgment is reversed.