JOHN A. MELENDY et al.

v.

CHARLES B. KEEN.

1. FRAUD—*defense to note and mortgage obtained by false and fraudulent representations.* Where a note secured by mortgage is procured to be made to a railroad company for stock subscribed by the maker, by means of false and fraudulent representations, made by the officers and others on behalf of the company, as to the financial condition of the company at the time, and as to the value of the stock and dividends it would earn, which are relied on, the fraud in procuring the execution of the note and mortgage will constitute a complete defense against the collection of the same by the company, or an assignee, after maturity, of the note.

2. ASSIGNEE—*as to mortgage—how far protected against defense.* In equity, the assignee of a promissory note, even though taking before its maturity, who seeks to foreclose the mortgage by which it is secured, takes it subject to any defense the maker has against the same in the hands of the original payee and mortgagee. But it is said the rule is different where the mortgage is assigned with the consent of the mortgagor, and such seems to be the doctrine on this subject.

3. ASSIGNMENT—*to cut off defense of maker.* The transfer of a note, and mortgage securing the same, made in the body of a separate instrument, executed for an independent purpose, as, an obligation of the transferer to pay money due from him, does not have the effect to transfer the note and mortgage so as to afford the holder that protection accorded to an assignee of a negotiable instrument before maturity without notice of any existing defense.

4. RECOUPMENT—*allowed in equity.* Where a railroad company, at the time of the execution of a note to it, secured by mortgage on real estate, in payment for stock subscribed, executes and delivers to the maker, as a part of the same transaction, a written guaranty indemnifying him against the interest on the note, in consideration of the maker's transfer of the dividends on his stock to that extent, the maker, on bill to foreclose the mortgage, may set up such undertaking in defense to the interest by way of recoupment or equitable set-off.

APPEAL from the Circuit Court of Carroll county; the Hon. W. W. HEATON, Judge, presiding.

This bill was to foreclose a mortgage made by John A. Melendy, his wife joining in the execution, to the Racine and

Mississippi Railroad Company. It embraces two hundred and sixty-four acres of farm lands by appropriate description, and was given to secure a note or bond signed by the mortgagor, for the sum of $4,000, bearing date March 18, 1856, payable to the mortgagee by its corporate name, at five years from the 10th day of May, 1856, with interest at the rate of ten per cent per annum, payable annually on the 10th day of May in each year, at the office of the company in the city of Racine.

As a part of the same transaction, and concurrently executed, the railroad company, by its proper and duly authorized agent, made and delivered to the mortgagor a contract, as follows :

"Whereas, John A. Melendy has executed a note and mortgage in favor of the Racine and Mississippi Railroad Company, bearing date on the 18th day of March, 1856, payable in five years from the 10th day of May, 1856, for the sum of $4,000, with interest annually at the rate of ten per cent per annum from and after the said 10th day of May, 1856; and whereas the said note and mortgage have been received in payment of forty shares of capital stock in said company : Now, therefore, in consideration of the relinquishment and assignment by the said John A. Melendy to the said company of so much of the dividends on said stock which he may become entitled to, as shall be sufficient to pay the interest on said note, the said company agree not to demand said interest from him, and in case said note and mortgage shall be negotiated by said company, then said company agree to save him harmless from said interest; and the said John A. Melendy hereby assigns to said company so much of any dividends to which he may become entitled on said shares as shall be sufficient to pay off said interest, and agrees to pay said principal sum when the same shall become due. And the said company agree to pay all surplus dividends over and above said ten per cent to the said John A. Melendy, and to pay the whole dividends arising on said stock, after said term of five years, to the said John A. Melendy."

The bond of the railroad company, to which the note and

mortgage were attached before it was transferred to the firm of Keen & Taylor, of which firm complainant was a member, is dated at the office of the company, in the State of Wisconsin, on the 13th day of May, 1856, is payable at the office of the company in the city of New York, and is as follows: ·

" Know all men, by these presents, that the Racine and Mississippi Railroad Company is justly indebted and promises to pay to ——, or bearer, $4,000 on the 10th day of May, 1861, at their office in the city of New York, together with interest thereon, after the 10th day of May, at the rate of ten per cent per annum, payable semi-annually on each 10th day of November and May, upon the presentation and surrender of the annexed coupons at the said office, to the payment whereof the said company hereby bind themselves firmly by these presents; and for the better security of each payment being made to the holder thereof, the said company have assigned and transferred, and by these presents do assign and transfer to the said holder of this bond, a certain note for $4,000, executed by John A. Melendy, together with a mortgage given collateral to and for the purpose of securing the payment of the same, dated on the 18th day of March, A. D. 1856, payable four years from the 10th day of May, with interest at the rate of ten per cent per annum, which said note and mortgage are hereto appended, and are transferable in connection with this bond, and not otherwise, to any parties or purchasers whomsoever; and the said company do hereby authorize and empower the holder of this bond, at any time, in case said company shall fail to perform any of the foregoing stipulations, by neglecting to pay either principal or interest on this bond when the same shall become due, to proceed and foreclose the said mortgage, or take such other legal remedy on said note and mortgage against said mortgagor or against this company on this present bond, or on both, as shall seem proper and expedient to said holder thereof."

The bill of sale to Keen & Taylor of this note and mortgage with other securities, is without date, but the proof is it was

398     MELENDY *et al. v.* KEEN.     [Sept. T.

Opinion of the Court.

delivered to them on the 30th day of December, 1861, is signed by the Racine and Mississippi Railroad Company, by H. S. Durand, and is as follows:

"Bought of Racine and Mississippi Railroad Company $16,300 farm mortgages, $5,000. Received payment in full by the surrender of said railroad company's note, August 8, 1857, for $5,000." The note surrendered purports to be the note of the railroad company to H. S. Durand, president, payable at the office of Keen & Taylor forty-five days after date, and is indorsed by H. S. Durand, president, and John Rinewalt.

Mr. L. E. DeWolf, and Mr. J. H. Knowlton, for the appellants.

Mr. C. B. Smith, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

Although this record has been somewhat confused by the introduction of depositions, taken with a view to be used primarily in other analogous cases, and of much irrelevant matter, the controlling facts, when ascertained, are neither numerous nor complicated. It is the usual bill to foreclose a mortgage.

Among the defenses insisted upon, is first, that the note secured by the mortgage was obtained for stock in the Racine and Mississippi Railroad Company by means of false and fraudulent statements as to the financial affairs of the company, and of its ability to complete the whole line of the projected road, in consequence of which the stock was and is valueless, and hence there was a total failure of the consideration of the note; second, before the bill was filed, the mortgage was released by the said railroad company, and since the release was placed on record in the county where the lands are situated, and while the title appeared of record to be unincumbered, the mortgaged property passed into the hands of a subsequent

purchaser for value; and third, the note and mortgage were never, in fact, assigned or indorsed to complainant.

On the first branch of the defense the testimony found in the record is quite voluminous and in some particulars conflicting, but as to many of the important facts, the proof is so conclusive they are not controverted. Prior to the transpiring of the events out of which this litigation arose, there existed under the laws of the State of Wisconsin, the Racine, Janesville and Mississippi Railroad Company, with power to construct a railroad from Racine to the Mississippi river, and by a subsequent act the company was authorized to construct a branch of its road to Beloit, on the line between that State and Illinois. The company had so far completed its road from Racine to Delavan, a distance of forty-six miles, as to have cars, both passenger and freight, running over it, and had done considerable grading between that point and Beloit, when it was determined by the management to extend its line of road through Illinois to Savannah on the Mississippi river. Under enabling acts passed by the legislatures of the two States, the Wisconsin railroad company was consolidated with two railroad companies existing under the laws of Illinois, with a view to construct a continuous line of road from Racine, on Lake Michigan, to Savannah, on the Mississippi river. The names of the companies in both States, under acts passed for that purpose, were changed to the Racine and Mississippi Railroad Company, and the consolidated companies were thereafter under the management of the same directory. A full and accurate account of the consolidation of the several companies into the Racine and Mississippi Railroad Company, and of the enabling acts under which the consolidation was effected, is given in the opinion in *Racine and Mississippi Railroad Co.* v. *Farmers' Loan and Trust Co.* 49 Ill. 331.

It does not appear that the Wisconsin railroad company ever had any capital actually subscribed and paid in, but that portion of the work of constructing its road from Racine to Beloit, that was done, was by means raised by selling, hypothe-

cating and pledging, in every possible way, municipal bonds, that had been voted for stock in the company, and "farm mortgages" given to secure individual subscriptions for stock. The income from this source had nearly or quite failed, when officers and agents of the company came into Illinois to commence operations to secure funds, in the same way, to construct its road from Beloit to Savannah, and the company had, prior to that time, executed a mortgage on the Wisconsin division of the road to secure $680,000 in bonds, which was equivalent to $10,000 per mile of the road finished and to be finished to the State line. A committee on behalf of the railroad company, consisting of its officers, and perhaps others, passed over the proposed route of the road, and held public meetings to induce persons to become interested in the enterprise and to subscribe for stock in the company, and pay for the same by giving their notes at five years, with annual interest at ten per cent, secured by mortgage on unincumbered real estate. As an inducement to citizens living on the line of the road to make subscriptions to the capital stock of the company, the most positive assurances were given at all these meetings of the success that had hitherto attended the enterprise, of the excellent management of the company in being able to construct the Wisconsin division without incurring any indebtedness, and that the plan that had worked so well in Wisconsin would work well in Illinois. Assurances, well nigh as convincing as a warranty, were also given that that part of the road then completed and equipped with sufficient rolling stock to do the business offered, was earning enough, over and above expenses, to pay a large dividend on the par value of the stock, and, in consideration of that fact, the company would guarantee to the holder, and save the makers harmless from all interest that would accrue on subscription notes for the five years such notes had to run, if the subscribers would release to the company so much of the dividends on the stock to be issued to them as would pay such interest. The overplus such stock would earn, however, was to be paid to the subscribers. It

was upon these representations, and others made by the committee on behalf of the company, as to its financial ability to complete the whole line of the road, and of the value of the stock as an investment, that defendant was induced to subscribe for stock and pay for the same with his note, secured by the mortgage sought to be foreclosed.

It may be that some of the representations made by the committee that influenced the action of defendant, as to isolated facts, may have been, and doubtless were, true. It is so with most exaggerated statements, that they are seasoned to some extent with truth,—otherwise they would gain no currency. But that which affected most vitally the affairs of the company was not disclosed. It was not made known, as the truth was, the company never had any paid in capital of any considerable amount. The representations were, the company had constructed its road in Wisconsin without contracting any indebtedness, and it had enough capital secured to complete its road to Beloit, and have a large surplus left with which to commence work in Illinois. Neither statement, as the sequel developed, had any foundation in fact. Nominally the company may have had the sum of money in securities as represented, but in fact the company was then on the verge of bankruptcy; the assets it claimed to have on hand consisted of municipal bonds and farm mortgages that had all, or nearly all, been previously hypothecated as collateral security—in many instances at one-half of their par value—to raise money with which to prosecute the work on the road. The debts thus secured had to be afterwards paid with these same securities at such ruinous sacrifices that ultimately exhausted them. The assets on hand, as shown by the report read to the citizens' meetings, consisted in part of $680,000 in bonds, which the company had previously secured by mortgage on the Wisconsin division of the road, estimated at their par value, but this fact was not disclosed. The fact the company undertook, as a part of the contract, to save defendant harmless from the interest to accrue on his note, for five years, in consideration

26—89 ILL.

of the assignment to it of the dividends the stock would earn in that period, was the strongest possible assurance that could be given of the value of the stock. There was nothing that would warrant the company in taking upon itself that onerous obligation. That portion of the road then completed and equipped, had only been running for a brief period, and it could not then be known it would earn enough over expenses to pay any dividends on the par value of the stock. It is apparent the obligation was assumed without the slightest expectation on the part of the company or its officers it would ever be performed, as, in fact, it never was. Events that subsequently transpired show conclusively that the stock was not then of any intrinsic value and never was. The .fact, some sales may have been made, does not militate against this view. If any sales were, in fact, made, it only shows the purchasers made bad investments. All the representations as to the value of the stock, must have been known, when made, to have no substantial foundation. Any one at all familiar with the difficulties experienced by the directors to raise money with which to prosecute the work so far as it had gone, as the members of the committee must have been, could not but know the enterprise was in imminent danger of failing any day, and no doubt it would have failed long before it did but for the impetus given to it by the new movement in Illinois.

No portion of the road, as projected in this State, was ever finished by the Racine and Mississippi Railroad Company, and about the strongest proof that the representations as to the financial ability of the company, its prosperous condition and the value of the stock were not warranted by the facts, is that all effort to build the road was abandoned within a few years and both divisions surrendered for the use of the bondholders. Any one at all conversant with the secret history of the resources of the company, as the officers taking the subscriptions doubtless were, must have anticipated the ultimate result, and that it could not be long postponed. This is evident from the report made by the directors in January, 1858, which shows

that to construct a work requiring at least $4,000,000, the stockholders altogether, from first to last, had not furnished $30,000, leaving the directors to look up the balance as best they could. It is then added in the report, the "item denominated 'cash stock' had been worked in by all manner of shifts and turns conceivable, while the actual cash embraced therein would make but a sorry figure in an enterprise of this magnitude."

As might have been anticipated by any one familiar with the resources of the company, it failed to pay any installment of interest on defendant's bond as the same matured. Afterwards, in pursuance of an order made by the board of directors on the 6th of December, 1869, the mortgage was released on the 21st day of January, 1870, and the release made a matter of record. That defendant relied upon the representations made by the officers of the company, as to the condition of the financial affairs of the company and as to the value of the stock, was deceived, and induced to execute the note secured by the mortgage sought to be foreclosed, admits of no doubt. Had all the facts been disclosed, it is inconceivable that any sane man would have subscribed for stock in the company and mortgaged his property to secure it. What was done was equivalent to actual fraud in procuring the subscription for stock then and always afterwards utterly valueless. As between the company and defendant, it is plain the company could claim no assistance at the hands of a court of equity to collect the debt secured by the mortgage.

It only remains to be seen whether complainant occupies any better position in equity than the railroad company would had it brought the bill to foreclose the mortgage, and if not, the bill should have been dismissed.

Under our statute a real estate mortgage is not a negotiable instrument, and the doctrine is well established that, in equity, an assignee of a promissory note, even before maturing, who seeks to foreclose the mortgage by which it is secured, takes it subject to any defense the maker had against the original

mortgagee, on the principle the mortgage is the foundation of the suit, and the note is only the incident or evidence of the debt secured. But it is said the rule is different where the mortgage is assigned with the consent of the mortgagor, and such seems to be the doctrine on this subject. *Matthews* v. *Wallwyn*, 4 Ves. J. 118. In this case it is claimed, in argument, that the note and mortgage were made with the distinct understanding they should be assigned, and that the railroad company was constituted the agent of the mortgagor to make the assignment, and from these facts, it is contended, the assent of the maker to the assignment may be inferred. Without conceding that the evidence establishes any such understanding, it is a complete answer to the position taken—that the mortgage itself was never, in fact, assigned other than by what is contained in the railroad company's bond, to which it was attached, except by delivery, which, at most, is only an equitable assignment, and bars no equities existing between the original parties to it.

The position taken, that the mortgage was assigned to complainant with the concurrence of the mortgagor, being untenable, there is no reason why the defense proposed to be made can not be admitted on precisely the same ground as in *Peck* v. *Bligh*, 37 Ill. 317, *Haskell* v. *Brown*, 65 id. 29, and *Franklin* v. *Twogood*, 18 Iowa, 515. The cases are analogous in principle, and many of the controlling facts are identical in all the cases. All of them concern notes secured by mortgages given for stock in this and other railroad companies. The defenses, though slightly different in character, were admitted in all of them on the same principle, viz: that the transfer made in the body of a separate instrument executed for an independent purpose did not have the effect to transfer the mortgage and the note secured so as to afford the holder that protection accorded to an assignee of a negotiable instrument, before maturing, for value and without notice of any defenses that may exist. That principle may be successfully invoked to let in the defense proposed to be made in the case

at bar. There is no pretense there was ever any assignment of the mortgage, other than that contained in the railroad company's bond, delivered with it, as was done in the cases cited, which, as we have seen, was not sufficient to bar the defense sought to be interposed. In *Peck* v. *Bligh*, the defense was placed on the ground the railroad company had guaranteed the maker of the note and mortgage against loss on the stock for which it was given. In *Haskell* v. *Brown*, the railroad company had guaranteed the payment of both the principal and interest due on the notes secured, in consideration of the assignment to it of the dividends the stock would earn, and as the stock was and continued to be worthless, and there were no dividends, it constituted a valid defense as against the railroad company, and for the reason there had been no assignment of the mortgage and note, the same defense could be made as against complainant, notwithstanding he may have been a purchaser before maturity. In the case we are considering, the railroad company guaranteed defendant against the interest to accrue on the indebtedness secured, for five years, and as the company never paid the interest or any part of it, it is conceded defendant sustained damages that might be set up as a defense, on the ground of recoupment or equitable set-off against complainant, the same as against the railroad company, had it brought the suit. That could only be done on the exact principle of the cases cited, and for the reason stated there had been no such assignment of the mortgage as would, in equity, prevail against the equities in favor of the mortgagor.

Logically, it follows the other defense sought to be made, which goes to the whole claim, viz: that the note was procured by means of false and fraudulent representations made by the officers and others on behalf of the company, as to the financial condition of the company at the time, and as to the value of the stock, and dividends it would earn, may, on the same principle, and for the same reason, be interposed against complainant. No matter what the defense may be, it was admitted

in each case referred to, on the same ground, and may be in this case. As we have seen, it would be inequitable for the railroad company, under the circumstances, to enforce payment of the indebtedness secured by the mortgage, and as complainant stands in no better position in a court of equity, under the decisions in analogous cases, than the mortgagee, the defense may be let in against him, even though he had been a purchaser of the note before maturity.

But there are other reasons, that are unanswerable, why the mortgagor, in this case, may be let in to make whatever defense he may have to the foreclosure suit, as against complainant. The note and mortgage were attached to a bond of the railroad company, of the same amount, and all of them left with Keen & Taylor for the purpose of raising money upon them. The bond was payable to bearer, and for the better security of the holder it is recited, in the bond itself, that the company has assigned and transferred to the holder the note and mortgage of defendant, and then a provision is added, that the note and mortgage appended are "transferable in connection with this bond, and not otherwise, to any parties or purchasers whomsoever." Were it allowable to treat this as an assignment of the note and mortgage to Keen & Taylor, which it is not, still there is no evidence in this record that Keen & Taylor ever assigned the same to complainant in connection with the bond of the railroad company or otherwise. Complainant, who was a witness in the cause, states that he made advances in cash and by indorsements of notes at different times, to the company, in 1857, and that the note and mortgage of defendant, with the bond of the railroad company attached, with other securities, were left with Keen & Taylor, of which firm he was a member, as security for a debt due from the railroad company to Keen & Taylor on a note for $5000. It will be remembered the bond of the railroad company was payable to bearer, and it is a noticeable fact, complainant does not say the note and mortgage, or either of them, were assigned and indorsed to Keen & Taylor, but the state-

ment is they were left with his firm. That debt, complainant states, was never paid except by the sale of collaterals given to him for his firm. He adds, that on the 30th of December, 1861, he purchased of the railroad company, through its president, the note and mortgage of defendant, with other securities, to the amount of $16,300, and that the only consideration was the surrender to the company of its note for $5000, of the date of August 8, 1857, as shown by the bill of sale. Although the bill of sale bears no date, complainant's testimony is, it was delivered to him of the 30th of December, 1861. That, it will be observed, was after the note had become due, and, of course, under our statute, he would take it subject to any defenses that existed in favor of the maker against the payee.

The views presented being conclusive of the whole case, it will not be necessary to consider the effect of the subsequent release of the mortgage by the railroad company.

The decree will be reversed, and the cause remanded with directions to the court below to dismiss complainant's bill.

*Decree reversed.*