Curry v. Supervisors of Decatur County.

---

CURRY v. SUPERVISORS OF DECATUR COUNTY ET AL.

1. **False Representations:** RELIEF IN EQUITY. The rule which grants relief only upon a representation *known* to be false, is applicable only in actions at law; it has no place in cases cognizable in equity.

2. **Railroads:** STATEMENTS OF PRESIDENT AS TO LOCATION OF LINE: TAXES IN AID OF: INJUNCTION. Persons who are asked to vote taxes in aid of a railroad may reasonably presume that the president of the company has authority to make representations as to the location of the proposed line; and where a majority of the votes of a township was secured in favor of such tax, by means of the representations of the president to the effect that the line would be permanently located through the center of the township, but it was afterward in fact located and constructed only along the border of the township, *held* that the company could not insist upon the payment of the tax, and that the collection of the same should be permanently enjoined, notwithstanding the president believed his representations to be true.

3. ———: TAXES IN AID OF: FORFEITURE: ESTOPPEL. In such case, where notice was given to the president of the company, before any grading was done in the township, that the tax payers would resist the collection of the tax, the taxpayers were not estopped from insisting upon the forfeiture of the tax, after the railroad was actually built.

*Appeal from Decatur District Court.*

FRIDAY, APRIL 20.

THE plaintiff, a resident and tax payer of Franklin township, in Decatur county, Iowa, for himself and other tax payers

of said township, brings this action, to enjoin the collection of a five per cent tax, voted in said township on the 13th day of September, 1879, to aid in the construction of the M., I. & N. R. R. The case was tried in August, 1881, and a decree was entered enjoining the collection of said taxes, as prayed for in the petition. The railway company appeals. The facts appear in the opinion.

*A. J. Baker* and *Harvey & Young*, for appellant.

*Stewart Bros.* and *Bullock & Huffman*, for appellee.

DAY, CH. J.—The evidence is quite voluminous, and is very conflicting. We cannot undertake to do more than to set forth the facts which seem to us to be established by the preponderance of the testimony. Prior to the year 1879, the Missouri, Iowa and Nebraska Railway Company had constructed and in operation a line of railroad from Keokuk to Corydon, the purpose of the company being to construct its road westward to some point on the Missouri River. In 1879 the company determined to commence the extension of its road westward from Corydon, thirty miles, and, in pursuance of this purpose, caused two routes to be surveyed. One of these lines ran through Benton and Clay townships in Wayne county, and High-Point, Woodland, Center, Decatur, Grand-River and Richland townships in Decatur county. The other line ran through Benton and Richmond townships in Wayne county, and Garden Grove, Franklin, Long-Creek and Richland townships in Decatur county. One of these routes became known as the Leon route, and the other as the Garden Grove route. The object of the company was to procure local aid on one of these routes, by the voting of taxes and by private subscription, sufficient to grade, bridge and tie the road.

The survey on the Garden Grove route passed through section sixteen, in Franklin township, within one-half mile of the center of the township. On the 8th day of September, five

days before the election was held in Franklin township, General F. M. Drake, the president of the Missouri, Iowa & Nebraska Railroad Company, made a speech in the interest of the tax, at Prairieville, in Long-Creek township, at which many of the voters of both Long-Creek and Franklin townships were present. In this speech he said in substance that, if the road was constructed through those townships, the surveying was all done except straightening up the line a little, and that the road would not be varied from the line already surveyed more than one hundred feet. He also said that he had no authority to locate the line; that this would be done by the board of directors, when the various results were reported to them; but from the whole testimony we think that what he said was likely to be understood, and was understood, by his hearers, as a statement that he had no authority to decide between the Garden Grove and Leon routes. The election in Franklin township was held on the 13th day of September, 1879, at which 68 votes were cast "for taxation," and 55 votes were cast "against taxation."

Soon after the tax was voted, a surveying party was sent out, which surveyed a new route, called the Humeston route. The survey on this line merely passes through the northern side of Franklin township. On the 12th day of March, 1880, a resolution was passed by the board of directors of the M., I. & N. R. R. Co., as follows: "That the board of directors recommend that the road from Corydon west, thirty miles, be located either by Garden Grove or Humeston, or by what is called the north line, and express their preference in favor of the latter, and that the president and chief engineer be authorized to determine the final location of the road between Garden Grove and the north line." Pursuant to this resolution, the road was located and constructed upon the Humeston route. The depot for Franklin township is within one hundred feet of the north line of the township, nine miles from some of the tax payers of the township, and but little nearer to others than a depot before existing on the C., B. & Q

Curry v. Supervisors of Decatur County.

Railroad. The evidence shows that voters, more than enough to have changed the result, were induced to vote for the tax by the representation of Drake that the road would be constructed, if at all through the township, on the line of the then existing survey, and that they would have voted against the tax if they had known that the road would have been constructed on its present line. We do not find from the evidence that Mr. Drake made a representation in his speech which he knew to be false, for the purpose of influencing voters to authorize the tax. Upon the contrary, we are inclined to believe from the testimony that he thought the road, if it should be contructed through Franklin township at all, would be built substantially upon the line then surveyed. But the rule which grants relief only upon a representation which is known to be false, is applicable only in actions at law. It has no place in cases cognizable in equity. "Whether the party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact, it is equally conclusive, for it operates as a surprise and imposition upon the other party." 1 Story's Equity Jurisprudence, § 193. See also *Wilcox v. Iowa Wesleyan University*, 32 Iowa, 367 (374).

*1. FALSE representation: relief in equity.*

The proposition to vote a tax in aid of a railroad partakes more of the nature of a contract, conferring reciprocal rights upon the respective parties, than of a mere ordinary election, and hence, if the electors have through fraudulent representations been induced to impose upon themselves a tax, a court of equity will grant them relief. Upon this branch of the case we adopt the reasoning and conclusion of BECK, Ch. J., in the case of *Sinnett v. Moles*, 38 Iowa, 25. It is insisted that Mr. Drake,

*2. RAILROADS: statements of president as to location of line: taxes in aid of: injunction.*

as president of the company, had no implied power derived from his office to act as agent of the corporation, but that, like other agents, he must derive his authority from the board of directors. This may be conceded where the president of a corporation undertakes to bind the company by his contracts. But persons dealing with a railway company may reasonably presume that the president of the company has authority to make representations as to the location of the line. And if, by representations of that character, he procures subscriptions or the vote of a tax, the company cannot accept the aid and repudiate the representations. See *Custar v. Titusville Gas Co.*, 63 Pa. St., 386; 1 Story's Equity Jurisprudence, 193*a*, and cases cited.

It is further insisted that the plaintiff is estopped from asserting the invalidity of the tax on the ground of his laches.

3. ——: taxes in aid of: forfeiture: estoppel. The plaintiff brings the action, not only in behalf of himself, but in behalf of other taxpayers of the township, too numerous to mention. It appears from the evidence that, before the defendant had done any grading in Franklin township, notice was given F. M. Drake, president of the defendant railway company, that the tax payers of Franklin township would contest the tax voted by them, on the ground of fraud and false representations. The defendant cannot claim that no objection to the tax was made until the benefits of the road were secured. We do not think the plaintiff is estopped from insisting upon the objections now urged. The judgment is

AFFIRMED.