KING ET AL. v. ORDWAY.

1. **Fraud:** PURCHASE OF LAND FROM DEVISEES: MISREPRESENTATIONS AS TO INCUMBRANCES: RELIEF IN EQUITY. Defendant, a neighbor of the decedent, and a shrewd business man, falsely represented to his devisees, who were his widow and daughters, that the claims against the estate amounted to a certain large sum, and that they were about to be enforced by litigation which would be expensive, and that the whole estate would be consumed; and thereupon he proposed to take a conveyance from them of the land, which constituted nearly all of the estate, and pay them $500 in cash, and assume all the claims against the estate. The devisees, relying on these statements, consented to the proposition, and executed the conveyance, and received the $500. Defendant bought in at a large discount many claims against the estate, which might have been collected in full when he bought them, but which were barred by the statute of limitations when judgment in this case was rendered. In this action to set aside the conveyance for the fraud above recited, the petition was granted, upon the repaying to

defendant of the $500, and an additional amount which he had paid for taxes on the land; but the court refused to grant defendant any relief on account of the claims which he had bought in in the prosecution of his fraudulent scheme, and which were barred as claims against the estate. *Held* that the judgment of the court was right, and should be affirmed.

*Appeal from Monona Circuit Court*—Hon. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, MARCH 7.

THIS is an action in equity to set aside a conveyance of real estate, and for other relief. The circuit court rendered a decree for plaintiffs. Defendant appeals.

*J. H. & C. M. Swan*, for appellant.

*O. C. Treadway* and *Joy, Wright & Hudson*, for appellees.

ROBINSON, J.—This action was commenced in 1881. On the 15th day of November, 1882, the plaintiffs filed their amended and substituted petition, in which they allege that Samuel King died testate in the year 1880, seized of the land in controversy; that the will was duly probated, and devised to the widow of decedent, Louisa C. King, and to their daughters, Rosanna C. Allen, Louisa C. Mann, and Josephine Beaton, the land aforesaid; that Louisa C. King was duly appointed and qualified as the executrix of the will, and, as such, entered upon the discharge of her duties; that the said land embraced nearly all the property of the estate of decedent; that on the 28th day of April, 1881, the defendant obtained from said devisees a conveyance of all of said land; that said conveyance was obtained by fraud and undue influence; that defendant wrongfully took and removed from said premises, of the crop of 1881, corn of the value of $1,000; that defendant threatened to institute legal proceedings to obtain possession of said premises. Plaintiffs further allege that after the discovery of said fraud, and before the com-

mencement of this action, said devisees tendered to defendant the $500 paid by him as part consideration for the conveyance, with interest, which tender was refused, and is now made in court; that the widow purchased the interest of her said daughters in the matters in controversy, and sold and agreed to convey to her co-plaintiff, Samuel C. King, one-half of her interest in said land and in the estate of decedent. The petition asks a temporary injunction to restrain defendant from instituting the threatened proceedings to obtain possession, (which was allowed and issued,) that the conveyance in controversy be set aside, that defendant be required to account for the corn taken by him as rent for 1881, and that general equitable relief be granted. The answer denies all allegations of fraud, admits the carrying away, of the crop of 1881, corn to the value of $480, and alleges that the agreed consideration for the land was the payment of all incumbrances on the land, and all claims against the estate of decedent, and the further sum of $500 to the devisees; that defendant has discharged on his part all obligations created by said agreement of purchase, and, in addition, has paid taxes on said land to the amount of $200.91; that the plaintiff Louisa C. King was in the wrongful possession of said premises during 1882; and that the use of the same for that year was worth $900. Defendant asks that the bill of plaintiffs be dismissed; that the possession of the premises be awarded to him, and his title thereto be quieted as against plaintiffs; that Louisa C. King be required to account to him for the rent of 1882; and that the temporary injunction be dissolved; and that he have costs.

I. The record of the case is voluminous, and much of the evidence conflicting. We feel justified in saying, however, that the evidence submitted fairly establishes the following facts: Samuel King and defendant had been acquainted for twenty-five years, during the most of which time they lived as neighbors in Iowa, and had business dealings with each other. In 1869, King moved to Kansas, residing there until

the spring of 1877, when he returned to his former home in Monona county. There he lived until his death, in 1880. While his home was in Kansas, he made a visit each year to the farm in controversy in Iowa, and continued his business relations with defendant. During a portion of the time the latter acted as his agent in looking after the farm. Defendant cut and removed a large quantity of timber, and received, for rent of 1874, $180, and, for rent of 1876, corn worth $1,000. He also collected $130 from trespassers on the timber land. September 3, 1875, these parties had a settlement, when $33.94 was found to be due the defendant, and King gave his note for that amount. After decedent moved back from Kansas he made frequent attempts to settle with defendant, but without success. He was much troubled over the treatment he received from defendant, who he claimed was owing him a large sum of money. No settlement is shown to have been made after the one mentioned. A few days before King's death, the defendant brought suit against him on two notes, but King died before the appearance term. One of these notes was for $390, dated April 11, 1873, due nine months after date, with interest at ten per cent after maturity. On this note was indorsed $50 as of October 13, 1878, and a memorandum showing payment of interest to September 27, 1876. The other note was for $274.60, dated September 27, 1876, with interest at ten per cent from its date. There is no indorsement upon it. These notes were to be taken as part of the consideration for the purchase in controversy. It is contended by plaintiffs that these notes had been paid before King's death. Defendant admits that he received $180 from the crop of 1874 and the rental of 1876, but utterly fails to account for it. His most plausible theory is that it was applied in the payment of usurious interest on the two notes last described, but he claims to have used only enough to make the usurious interest ten per cent per annum, and less than $300 would be required for that purpose. He remembers no business transactions with dece-

dent, after his return from Kansas, which would require the use of any of this money. We are satisfied that the larger of these two notes was paid, but inadvertently left in the hands of defendant by decedent, and the other note grew out of another transaction, and was more than paid by rents received, and not accounted for, by defendant.

II. When Samuel King died, he was owing a son named William King, who lived in Indiana. This indebtedness was represented by notes, and receipts for taxes paid, amounting in the aggregate, if all that is claimed for it by defendant be true, to less than $5,000. One of the notes was dated October 18, 1872, due in one year, for $1,845.04, with interest at ten per cent after maturity, and was secured by a mortgage on the land in controversy. The other claims were unsecured. None of these claims had been filed with the executrix; and only two, amounting to less than $100, were so filed by any one. On the 28th day of April, 1881, defendant obtained from the devisees of the land in question the conveyance in controversy. To obtain it, he stated to them, in substance, that he held a claim against the estate of decedent for from $800 to $900, which must be paid at once; that the attorney for the William King claim was at Onawa, and would commence proceedings to enforce these claims forthwith; that they amounted to $8,000, besides the claim of defendant; that, if the matter was not settled at once, expensive litigation would ensue, and the estate would be entirely consumed by it. To corroborate his statement, he produced and read a letter from an attorney at Onawa, which was couched in somewhat ambiguous terms, but which was explained by defendant to mean that the William King claim amounted to $7,500 or $8,000, and must be paid at once. Whatever may have been the intent of the writer, the amount he named in the letter as being claims against the estate was entirely too large. Defendant finally offered the devisees $500 for their interest in the land in question, and agreed, if accepted, to pay all claims against the estate, including the

incumbrances on the land. Delay was asked, but he insisted on prompt action to avoid costs. His proposition was finally accepted, and the deed delivered. It is urged by appellant that his statements were mere expressions of opinion, that the devisees had the same means of knowing the facts that he had, that the price he agreed to pay was a fair one, and that his relations to these parties were not such as to give his statements any special weight. So far as defendant expressed opinions in regard to the value of the land, his position is well taken. The devisees were so situated as to be chargeable with full knowledge of its value. Nor do we think that the relations between the parties were such as to cause the devisees to rely upon the friendship of defendant. It is true, he had been occasionally employed for twenty-five years as their physician, and their relations were friendly; but he was also known to be an exacting creditor, diligent in the prosecution of his claims, and well informed and experienced in matters of business. We think that, while the devisees did not rely upon his friendship, they did rely upon his statements of fact, and believed that he was telling the truth in regard to the amount of indebtedness against the estate, and that the estate was all liable, and would be taken for its payment. While the statements of defendant in regard to the value of the land may be regarded as mere expressions of opinion, what he said about the amount of indebtedness was a statement of an alleged fact, for which he ought to be and is responsible. He knew that his own claim for $800 or $900 was fraudulent, and that the William King claims were but about $5,000. He admits that he had obtained a list of these from some source, and had estimated them to amount to not more than $5,500 or $5,700. We are not prepared to believe that a man of his manifest shrewdness and business experience would agree to assume and pay these claims without knowing their amount. It is said that Mrs. King had a list of the William King claims, and could have informed herself as to their amount; but it is shown that

she is an illiterate woman, not accustomed to transact business, and that she did not in fact know to what they amounted. Nor could she have ascertained that fact from the list in question. Even if defendant did not know the exact amount of the William King claims, that would not affect his responsibility. He assumed to state a fact in order to obtain the conveyance in controversy, and knew that his assertions were false. He is therefore chargeable with fraud. (*Curry v. Decatur County*, 61 Iowa, 71; *Hale v. Philbrick*, 42 Id., 81; *Bondurant v. Crawford*, 22 Id., 40.) It is shown that plaintiffs are entitled to all the rights to matters in controversy which were held by the defendant's grantors. We think the decree of the circuit court setting aside the deed was correct.

III. The decree set aside the deed in controversy, and declared the title to the land to be in plaintiffs. It allowed defendant the $500 paid when the deed was delivered, $200.91 for the taxes of 1880 and 1881 and interest, and found the same paid by the corn of 1881 taken by him. The temporary injunction was made permanent. It is insisted on the part of appellant that the decree is not equitable, even if it be conceded that the deed should be set aside. It is said that appellant acquired a large amount of claims, which were valid and collectible of the estate when acquired, but which are now barred by the statute of limitations. It is suggested in the argument for appellant that, in case the deed is set aside, the claims of defendant be established, and that plaintiffs be required to pay the same. In view of the facts in this case, we do not think the relief suggested ought to be granted. Defendant secured the claims at a large discount, and could have enforced their payment in the usual manner, and with much profit to himself. Not satisfied with reasonable returns for his investment, he has sought larger gains by methods to which no fair-minded man would resort. Excepting two claims, amounting to less than $90, defendant has canceled no claim against the estate, and has refused to surrender to the executrix the claim he insists that he has

paid. It appears that at least one of the cases commenced against decedent is still kept in court. Defendant gave to the devisees of decedent the notice required preliminary to taking a tax deed for the premises, and had it served on the 9th day of July, 1881. The only claims paid by defendant were so paid the day after the filing of the amended and substituted petition. His entire course satisfies us that he has not been acting in good faith. To now reinstate him in the position which he abandoned with fraudulent intent, after he has exhausted every means to maintain the advantage he wrongfully obtained, would be to place a premium upon speculative attempts of that character. We are disposed to leave defendant where he is placed by his own voluntary acts.

AFFIRMED.