LINCOLN TOWNSHIP, APPELLANT, v. KANSAS CITY & OMAHA RAILROAD COMPANY ET AL., APPELLEES.

FILED JUNE 20, 1906.   No. 14,377.

1. **Railroads:** FORECLOSURE SALE: LIABILITY OF PURCHASER.  A railroad corporation which succeeds to the property and rights of another railroad corporation through the medium of a sale upon a decree of foreclosure, or other judicial sale, is not answerable for the general debts of the corporation whose property and franchises are thus acquired.

2. **Parties.**  The right of a township in this state to maintain an action to recover the value of bonds voted by the electors of the township to aid in the construction of a railroad doubted.

APPEAL from the district court for Kearney county: CONRAD HOLLENBECK, JUDGE.    *Affirmed.*

*Joel Hull* and *E. C. Calkins,* for appellant.

*J. W. Deweese* and *J. L. McPheely, contra.*

DUFFIE, C.

The plaintiff and appellant is one of the organized townships of Kearney county, Nebraska.   Its petition filed in the district court in this case is very voluminous, but the material facts may be briefly stated as follows:   In the year 1887 the Burlington & Missouri River Railroad Com-

pany, which then was and still is a part of the Chicago, Burlington & Quincy system, owned and operated all the railroads in Kearney county. About this time the defendant, the Kansas City & Omaha Railroad Company, was organized and projected a line from Fairfield in Clay county to Alma in Harlan county. It solicited aid from the people of Lincoln township and, as an inducement to voting bonds, represented to the electors of the township that the road would be operated in close traffic connection with the St. Joseph & Grand Island Railroad, and with the Union Pacific Railroad and the various other lines known as the Union Pacific system; that it would give the people of the township the advantage of a competitive road, and increase their facilities for reaching competitive markets and the interchange of business with the various towns and cities reached by the roads of the Union Pacific system. Acting upon these inducements the electors of the township on March 26, 1887, voted aid to the extent of $23,500. The road was constructed, the aid bonds delivered to the company, and the road operated according to the representations made until about June 1, 1902. It is further alleged that the Kansas City & Omaha Rail-Road Company had issued bonds and secured them by a mortgage upon its road and franchises, and that the mortgage was foreclosed in the United States circuit court for the district of Nebraska in 1896, and the road and its franchises sold to the Kansas City & Omaha Railway Company; that said new company took possession about September, 1896, and continued to operate the same in traffic connection with the Union Pacific and Grand Island systems, and in competition with the Chicago, Burlington & Quincy system, until July 1, 1902; that on that date the Kansas City & Omaha Railway Company ceased to operate the road and surrendered it to the Burlington & Missouri River Railroad Company, which road has ever since operated the same as a part of the Chicago, Burlington & Quincy system. It is further alleged in the petition that the circuit court of the United States, in its

decree foreclosing the mortgage made by the Kansas City & Omaha Railroad Company, expressly reserved to said court the right to retake and resell all said property, rights and franchises in satisfaction of any judgment which might thereafter be found against said Kansas City & Omaha Railroad Company upon any liability then existing against said company. Upon the theory that the representations made by the agents of the Kansas City & Omaha Railroad Company to secure the voting of bonds in aid of its construction constitute a contract between the company and the township and its electors, and that said contract has been breached by the failure of that company and its successors in the ownership of the road to operate the same in connection with the Union Pacific and Grand Island systems, and in competition with the Chicago, Burlington & Quincy system, this action was brought to recover the value of the bonds donated to said road. A demurrer to this petition was overruled, after which the defendants answered, and a trial resulted in a judgment for the defendants which we are asked to review.

It is true that in *Wullenwaber v. Dunigan,* 30 Neb. 877, and in *Nash v. Baker,* 37 Neb. 713, an action was maintained by a taxpayer to enjoin the issue of bonds voted in aid of a railroad company, upon the ground that false and fraudulent representations had been made by the company through its officers and agents by which the electors were induced to cast an affirmative vote upon the proposition. But in these cases the one whose property was to be affected, whose rights were endangered, was the plaintiff in the action. After a somewhat extended examination, we have failed to find any case which is a precedent for the one under consideration. The cases cited and relied upon by this court in its opinion in *Wullenwaber v. Dunigan, supra,* are all cases where the interposition of the court was sought to protect a plaintiff against the enforcement of a right claimed by the defendant, but grounded upon fraudulent acts of the railroad company or those of its agents. *Curry v. Supervisors of Decatur County,* 61

9

Ia. 71, 15 N. W. 602, and *Sinnett v. Moles,* 38 Ia. 25, were cases to enjoin the collection of a tax voted in aid of a railroad company, the electors being induced to this course by false and fraudulent representations made by the company through its agents. *Wickham v. Grant,* 28 Kan. 517, and *Melendy v. Keen,* 89 Ill. 395, were actions upon obligations given by the defendants to aid a railroad company in the construction of its line. The defendants pleaded that the obligations were obtained from them through false and fraudulent representations made by the agents of the company, and this defense was held good. *Sandford v. Handy,* 23 Wend. (N. Y.) 260; *Vreeland v. New Jersey Stone Co.,* 25 N. J. Eq. 140, and *Davis & Co. v. Dumont,* 37 Ia. 47, hold that subscriptions to the stock of a corporation, if procured by fraud, will be set aside. *Burhop v. City of Milwaukee,* 18 Wis. 453, holds that a court of equity may relieve the cloud of a mortgage given a railroad company to secure a note executed as a stock subscription to the corporation when fraudulently obtained. And *McClellan v. Scott,* 24 Wis. 81, holds that fraudulent representations made by a railroad company relating to its pecuniary condition are a ground for avoiding a contract of sale of land obtained thereby. None of these cases is authority in support of the claim of the plaintiff in this action. In each of them the action was brought or the defense maintained by the party directly interested and who would have been damaged by the enforcement of the contract. Another feature of these cases which does not obtain here was that fraud was the ground of the action. In this case no charge of fraud is made. From 1887 to 1896 the original company to which this aid was voted operated its road, and performed every condition upon which the aid was obtained and every representation made to the electors. Through no fault of its own and because of its inability to pay its just obligations, its property was sold under a decree of the United States circuit court and passed to another corporation, which operated the road from 1896 to 1902, apparently to the full satisfaction of everyone concerned. No

charge of fraud is made in the foreclosure proceedings nor in the organization of the new company which bought in the property, nor is there any circumstance connected with these transactions giving rise to even a suspicion of fraud. The defendants, then, are liable, if at all, not because of any fraud perpetrated, but for breach of contract, and it is familiar law that claims for breach of contract cannot be awarded priority over the bondholders of a railroad company, nor do they become an enforceable claim against a corporation which succeeds to another on foreclosure proceedings. In *Austin v. Tecumseh Nat. Bank,* 49 Neb. 412, this court said:

"In order to render a newly organized corporation liable at common law for the debts of an established corporation or firm to whose business and property it has succeeded, it should, in the absence of a special agreement, affirmatively appear from the pleadings and proofs that the transaction in question is fraudulent as to creditors of the old corporation, or that the circumstances attending the creation of the new and its succession to the business and property of the old corporation are of such character as to warrant the finding that it is a mere continuation of the former."

In a note in the above case found in 59 Am. St. Rep. 543, 558, numerous cases are cited in support of the rule that a railroad corporation which succeeds to the property and rights of another railroad corporation through the medium of a sale upon a decree of foreclosure, or other judicial sale, is not answerable for the general debts of a corporation whose property and franchises are acquired.

It is claimed by the appellant that the state, in granting a franchise to the Omaha & Kansas City Railroad Company, extended the privilege which its charter conferred, upon the condition that the company, on its part, should faithfully perform all the public functions required of it by law, and that this required it to operate its road in competition with that of the Chicago, Burlington & Quincy Railway Company. Conceding this to be true, it is evident that an action for damages for breach of contract is

not an appropriate action to enforce such duty, and that the payment of damages would not tend in the least to that end.

There are other considerations which lead us to believe that the judgment of the district court should be affirmed. While the question was not argued, it is one of first impression that the plaintiff cannot sustain the action. It has not been damaged in its corporate capacity, or in any other way, so far as we can see from any matter alleged in the petition or offered in evidence. What interest has it in the alleged contract which entitles it to damages for a breach? It is true that the bonds were issued in the name of Lincoln township, but the electors of the township voted the bonds and the property owners have paid the same. What will be done with any money recovered by the plaintiff? To the credit of what fund will it be placed? Will the township itself become the absolute owner or will it be distributed among those from whom it was collected? Under what authority does the township prosecute this action for the taxpayers, the real parties in interest? What authority has it to distribute the fund and to whom shall distribution be made? Are the present owners of the land, who probably bought and fixed the price in contemplation of this tax, to receive it, or such portion of it as they have paid, or does the whole amount assessed against any particular tract belong to the owner at the time the aid was voted? Under what statute is it made the duty of the township to bring this action, or where, in our laws relating to municipalities, is authority found for a township to bring and maintain an action in which it has no direct interest? To us it seems quite plain that the owners of the property upon which the tax was levied, and who had paid the tax making up the fund, are the real parties in interest and the only ones who have any right to complain of a breach of the contract, if the representations which induced the voting of aid constitutes a contract in such a sense that a failure to observe its terms entitles the electors to complain and to maintain an action for damages. We

incline to the belief that the demurrer to the petition should have been sustained.

We recommend an affirmance of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion; the judgment of the district court is

AFFIRMED.